# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2020-NMCA-051

Filing Date: August 27, 2020

No. A-1-CA-36032

STATE OF NEW MEXICO,

     Plaintiff-Appellee,

v.

LEO COSTILLO, JR.,

     Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Karen L. Townsend, District Judge

Released for Publication November 24, 2020.

Hector H. Balderas, Attorney General
Santa Fe, NM
Laurie P. Blevins, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**HANISEE, Chief Judge.**

**{1}**    The formal opinion previously filed in this matter on September 26, 2019, is hereby withdrawn, and this opinion is substituted therefor.[1]

---

[1]This opinion has been modified on remand from our New Mexico Supreme Court, *see* No. S-1-SC-37981 (filed January 31, 2020), which instructed that this Court reconsider our original opinion in light of

**{2}** Defendant Leo Costillo, Jr., appeals from his convictions of twenty-one counts of criminal sexual penetration of a minor (CSPM), one count of attempt to commit CSPM, and one count of intimidation of a witness. Defendant argues that his convictions must be reversed because during trial, the State impermissibly commented on his prearrest silence in violation of his Fifth Amendment right to remain silent. Defendant also argues that due process and his right to be free from double jeopardy require the reversal of all but one of his convictions for CSPM and that his prosecution for intimidation of a witness was time-barred, requiring reversal of that conviction as well. We agree that the State's pervasive references to Defendant's invocation of his Fifth Amendment privilege, and the conclusion of guilt the State suggested be drawn therefrom, does not withstand constitutional scrutiny. We further agree that the State's prosecution of Defendant for intimidation of a witness was time-barred. We disagree, however, with Defendant that the State is barred from reprosecution under *State v. Breit*, 1996-NMSC-067, 122 N.M. 655, 930 P.2d 792. Finally, we decline to resolve Defendant's contention that his CSPM convictions violated his due process and double jeopardy rights, given his failure to challenge the nature of the criminal information on those grounds prior to trial. We nonetheless permit such a challenge on remand based upon our New Mexico Supreme Court's recent clarification of law in this area. We, therefore, reverse Defendant's convictions and remand for a new trial.

## BACKGROUND

**{3}** During the summer of 2008, when R.S. was six years old, she lived with her grandmother and Defendant, her grandmother's husband. According to the criminal information filed by the State and R.S.'s testimony at trial, Defendant repeatedly raped R.S. from August 2008 until April 2009; threatened to hurt R.S. or her brother if she told anyone; and attempted but failed to rape R.S. in April 2013. R.S. first told her mother of the sexual abuse in 2015, and six months later, both reported it to police.

**{4}** Defendant was charged by criminal information with twenty-six counts of CSPM, which uniformly alleged identical instances of conduct occurring on or about the same date: August 15, 2008.[2] Defendant was also accused of a single count of intimidation of a witness. At trial, R.S., her mother, and San Juan County Sheriff's Deputy Detective Robert Tallman, the detective who conducted a voluntary, non-custodial interview of Defendant prior to any charges being filed, testified for the State. Defendant testified in his own defense, as did his wife and R.S.'s grandmother, Rosita Costillo. The jury returned guilty verdicts on all counts submitted to it. Defendant appeals. We reserve further discussion of the facts for our analysis.

## DISCUSSION

---

*State v. Lente*, 2019-NMSC-020, 453 P.3d 416, which was filed shortly after issuance of our original opinion in this case.

2Following the State's oral motion at trial to amend the information based on testimony that was presented at trial, there remained twenty-one counts of CSPM, one count of attempted CSPM (a lesser included offense of one count of CSPM), and one count of intimidation of a witness. The jury ultimately returned guilty verdicts on these remaining twenty-three counts.

## I. The Prosecutor's Comments on and Use of Defendant's Invoked Silence Violated His Fifth Amendment Rights and Constituted Fundamental Error

{5}     Defendant argues that the prosecutor's "direct and extensive comment on constitutionally protected silence" contributed to the "[e]xtreme and pervasive prosecutorial misconduct" that deprived him of a fair trial. Detective Tallman interviewed Defendant at the San Juan County Sheriff's office, and the clear implication of Detective Tallman's questioning, which Defendant quickly learned, was that Detective Tallman believed Defendant had sexually abused R.S. Despite the setting, and consistent with the non-custodial nature of the interview, Defendant declined to answer Detective Tallman's questions and asked several times to end the interview. Defendant contends that at his ensuing trial the prosecutor then impermissibly commented on Defendant's invocation of his Fifth Amendment right to remain silent during his voluntary, prearrest interview with Detective Tallman. Indeed, during trial, the prosecutor commented on Defendant's silence during every phase of the proceeding: in opening statement, during direct examination of Detective Tallman, while cross-examining Defendant, during his closing argument, and finally in rebuttal. Defendant, however, failed to make any objections to this evidence or argument.

{6}     "[W]e review de novo the legal question whether the prosecutor improperly commented on [the d]efendant's silence." *State v. Foster*, 1998-NMCA-163, ¶ 8, 126 N.M. 177, 967 P.2d 852. "When a defendant fails to object at trial to comments made by the prosecution about his or her silence, we review only for fundamental error[.]" *State v. DeGraff*, 2006-NMSC-011, ¶ 21, 139 N.M. 211, 131 P.3d 61. "This review consists of two parts. We first determine whether any error occurred, i.e., whether the prosecutor commented on the defendant's protected silence. If such an error occurred, we then determine whether the error was fundamental." *Id.* Before we conduct our fundamental error analysis, however, we must answer two threshold questions—whether the State may use a defendant's prearrest silence as substantive proof of guilt when Defendant has invoked his right to remain silent, and whether Defendant did in fact invoke his right to remain silent in this case.

### A.     Prosecutors in New Mexico May Not Use a Defendant's Invoked Prearrest Silence as Substantive Evidence of Guilt

{7}     The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. That "guarantee against testimonial compulsion . . . must be accorded liberal construction in favor of the right it was intended to secure." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). "It is the extortion of the information from the accused, the attempt to force him to disclose the contents of his own mind, that implicates the Self-Incrimination Clause." *Doe v. United States*, 487 U.S. 201, 211 (1988) (internal quotation marks and citations omitted). "There are four relevant time periods at which a defendant may either volunteer a statement or remain silent: before arrest; after arrest, but before the warnings required by *Miranda v. Arizona*, 384 U.S.

436, . . . (1966), have been given; after *Miranda* warnings have been given; and at trial." *DeGraff*, 2006-NMSC-011, ¶ 11.

{8}     It remains axiomatic in American jurisprudence that a defendant's exercise of his right to remain silent at trial may not be used as a basis to convict him. *See id.* ¶ 12 ("The Fifth Amendment protects a defendant's decision not to testify at trial from prosecutorial comment."); *see also Griffin v. California*, 380 U.S. 609, 615 (1965) ("[T]he Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."). It is also well established that "due process guaranteed by the Fifth Amendment protects post-*Miranda* silence." *DeGraff*, 2006-NMSC-011, ¶ 12 (citing *Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976)). The law is "less clear" regarding a prosecutor's ability to comment on a defendant's invocation of his or her right to remain silent post-arrest, pre-*Miranda*. *DeGraff*, 2006-NMSC-011, ¶ 13. Even more uncertain is whether there exists a constitutional limitation on a prosecutor's ability to comment on a defendant's prearrest and pre-*Miranda* silence, the circumstance present in this case.

{9}     In *Jenkins v. Anderson*, the United States Supreme Court held that use of prearrest silence to impeach a criminal defendant's credibility does not violate the Fifth Amendment, but the Court expressly reserved the question of whether a defendant's prearrest silence can be used in circumstances other than impeachment. *See* 447 U.S. 231, 236 n.2, 239 (1980) ("Our decision today does not consider whether or under what circumstances prearrest silence may be protected by the Fifth Amendment."). That question has remained open since *Jenkins*, as evinced by the division among lower courts considering whether the Constitution protects prearrest, pre-*Miranda* invocations of silence from substantive evidentiary use.[3]

---

[3]*See United States v. Okatan*, 728 F.3d 111, 116-17, 119-20 (2d Cir. 2013) (holding the prosecution was not permitted to use the driver's prearrest invocation or his subsequent silence as part of "its case in chief as substantive evidence of guilt"); *Combs v. Coyle*, 205 F.3d 269, 283 (6th Cir. 2000) (holding the prosecution was barred from using the defendant's prearrest statement "as substantive evidence of guilt" because that would violate "the Fifth Amendment's privilege against self-incrimination"); *United States v. Burson*, 952 F.2d 1196, 1200-01 (10th Cir. 1991) (concluding the defendant's prearrest, pre-*Miranda* silence could not be substantively used by the prosecution at trial because "once a defendant invokes his right to remain silent, it is impermissible for the prosecution to refer to any Fifth Amendment rights which [the] defendant exercised"); *Coppola v. Powell*, 878 F.2d 1562, 1564, 1568 (1st Cir. 1989) (holding admission of a state trooper's testimony that the defendant stated prior to arrest that "he would not talk . . . without a lawyer" during the prosecution's case in chief violated the Fifth Amendment); *U.S. ex rel. Savory v. Lane*, 832 F.2d 1011, 1018-20 (7th Cir. 1987) (holding that the defendant's prearrest, pre-*Miranda* statement to officers that he did not want to speak to them was protected from use by the prosecution in its case in chief by the Fifth Amendment, but concluding it was harmless error); *but see United States v. Oplinger*, 150 F.3d 1061, 1066-67 (9th Cir. 1998) ("[W]e respectfully disagree with the First, Seventh and Tenth Circuits, which have all held that pre[]arrest silence comes within the proscription against commenting on a defendant's privilege against self-incrimination[.]"), *overruled on other grounds by United States v. Contreras*, 593 F.3d 1135, 1136 (9th Cir. 2010) (per curiam); *United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir. 1991) ("The government may comment on a defendant's silence if it occurred prior to the time that he is arrested and given his *Miranda* warnings."). State courts likewise are divided on the issue of whether the prosecution may introduce such evidence during its case in chief, with a significant number of states holding, on either federal or state constitutional grounds, that

**{10}** In 2013, the United States Supreme Court granted certiorari "to resolve a division of authority in the lower courts over whether the prosecution may use a defendant's assertion of the privilege against self-incrimination during a noncustodial police interview as part of its case in chief." *Salinas v. Texas*, 570 U.S. 178, 183 (2013). A plurality of the divided Court, however, determined that the defendant failed to invoke his right of silence and thus found it unnecessary to reach the question on which certiorari was granted. *See id.* Concurring in the judgment, Justice Thomas, joined by Justice Scalia, wrote that even had the defendant invoked the privilege, "the prosecutor's comments regarding [the defendant's] precustodial silence did not compel him to give self-incriminating testimony" and were, therefore, not improper comments on silence. *Id.* at 192 (Thomas & Scalia, JJ, concurring in judgment). The dissent, authored by Justice Breyer and joined by Justices Ginsburg, Sotomayor, and Kagan, concluded oppositely, reasoning that "the Fifth Amendment here prohibits the prosecution from commenting on [the defendant's] silence in response to police questioning." *Id.* at 193 (Breyer, Ginsburg, Sotomayor, & Kagan, JJ, dissenting). *Salinas*, therefore, left in place the differing federal circuit and state perspectives on the substantive viability of prearrest, pre-*Miranda* invoked silence.

**{11}** We agree with those courts that have concluded that a defendant's prearrest, pre-*Miranda* silence, once invoked, may not be admitted as substantive evidence of guilt by a prosecutor at trial. We, too, consider assertions of an individual's Fifth Amendment right of silence in the face of accusatory questioning by law enforcement to not be fodder for insinuations of guilt at trial. *See id.* at 195 ("[T]o allow comment on silence directly or indirectly can compel an individual to act as a witness against himself—very much what the Fifth Amendment forbids." (Breyer, J., dissenting) (internal quotation marks and citation omitted))); *Okatan*, 728 F.3d at 119 (answering in the negative "the question the Supreme Court left unanswered in *Salinas*: whether the prosecution may use a defendant's assertion of the privilege against self-incrimination during a noncustodial police interview as part of its case in chief" (internal quotation marks and citation omitted)). To hold otherwise validates—at the expense of the constitutional right holder—a classic "lose-lose" scenario, wherein the suspect either elects to answer police questions at the risk of self-incriminating disclosure or does not do so and the prosecution later uses the silence as evidence of guilt. In this context, the Constitution proscribes such an advantage to the state to the detriment of individuals within it.

**{12}** While Defendant was present at the interview voluntarily, he quickly realized even in the absence of *Miranda* warnings that anything he said could be "dangerous" to himself as an "injurious disclosure[.]" *See Hoffman*, 341 U.S. at 487. To conclude that the State may use Defendant's ensuing invocation of the Fifth Amendment as evidence of his guilt in its case in chief would, as explained by the Supreme Court in *Griffin*, render New Mexico courtrooms forums for little more than "an inquisitorial system of criminal justice" that imposes "a penalty . . . for exercising a constitutional privilege." 380 U.S. at 614 (internal quotation marks and citation omitted); *id.* at 615 (holding that the

---

the state is barred from substantively using such prearrest expressions of silence. *See State v. Kulzer*, 2009 VT 79, ¶ 14, 186 Vt. 264, 979 A.2d 1031 (summarizing state court decisions).

Fifth Amendment "forbids either comment by the prosecution on the accused's silence [by not testifying at trial] or instructions by the court that such silence is evidence of guilt"). This we cannot abide. As did the analysis that underpinned *Griffin* and the dissent in *Salinas*, we decline to make one's prearrest assertion of the Fifth Amendment costly to a criminal defendant by allowing the State to infer guilt based thereon. We hold that prosecutors in New Mexico may not use a defendant's prearrest silence as substantive evidence of guilt when the defendant has invoked the Fifth Amendment privilege against self-incrimination.

## B.      Defendant Invoked His Right to Remain Silent

{13}    We next turn briefly to the State's argument that Defendant failed to invoke his right to remain silent. If Defendant did not invoke his Fifth Amendment privilege, the prosecutor's comments on Defendant's silence were not constitutionally prohibited. *See DeGraff*, 2006-NMSC-011, ¶ 20 (recognizing "that silence is protected only if a right to remain silent is invoked"); *see also Salinas*, 570 U.S. at 191 ("Before [the defendant] could rely on the privilege against self-incrimination, he was required to invoke it."). "As a general rule, the constitutional privilege against self-incrimination is available only if it is invoked as the ground for refusing to speak." *State v. Gutierrez*, 1995-NMCA-018, ¶ 8, 119 N.M. 618, 894 P.2d 395. "If the witness desires the protection of the privilege, he must claim it[.]" *Id.* (alteration, internal quotation marks, and citation omitted). "It is agreed by all that a claim of the privilege does not require any special combination of words." *Quinn v. United States*, 349 U.S. 155, 162 (1955). "[N]o ritualistic formula is necessary in order to invoke the privilege." *Id.* at 164. "All that is necessary is an objection [to a question] stated in language that [the propounder of the question] may reasonably be expected to understand as an attempt to invoke the privilege." *Emspak v. United States*, 349 U.S. 190, 194 (1955).

{14}    Here, the recording of Detective Tallman's interview of Defendant reflects that Defendant unequivocally informed Detective Tallman that he would not speak with him upon learning the topic Detective Tallman wished to discuss. When Detective Tallman invited Defendant to "start at the beginning and tell me about how that all started and how that happened[,]" referring to "some inappropriate things" that had gone on with R.S., Defendant immediately responded, "Let's stop there. Now that's the reason why I was asking what am I—am I in trouble for something because—this, this is gonna go to more evil stuff. Shouldn't I have an attorney here?" Defendant also repeatedly asked to stop the interview and indicated that he did not wish to continue speaking with Detective Tallman by asking, "So, can we stop for a while? I mean, step out of this, you know?" When Detective Tallman continued to question Defendant, Defendant interjected, not ten seconds later, "Can I go now? Can we set another time when we can talk?" Defendant ultimately demonstrated his intent not to speak with Detective Tallman, i.e., to exercise his right to remain silent, by answering affirmatively that he did not wish to speak further and by leaving the interview. *Cf. State v. King*, 2013-NMSC-014, ¶ 10, 300 P.3d 732 (holding that the defendant invoked his right to remain silent in a custodial interrogation when the defendant's invocation was not ambiguous). Based on the

foregoing, we have little difficulty concluding that Defendant invoked his right to remain silent during his interview with Detective Tallman.

## C. The Prosecutor Impermissibly Commented on Defendant's Silence

**{15}** We next consider whether—under existing precedent and the prohibition we announce today—the prosecutor's questions to Detective Tallman and Defendant and statements during the State's opening and closing remarks constituted improper commentary on Defendant's silence. In so doing, we consider "whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the accused's exercise of his or her right to remain silent." *DeGraff*, 2006-NMSC-011, ¶ 8 (internal quotation marks and citation omitted).

**{16}** As stated already, the prosecutor directly exploited Defendant's refusal to answer Detective Tallman's questions throughout the proceedings. Twice during his opening statement, the prosecutor noted Defendant's failure to deny his involvement in R.S.'s sexual abuse during the interview with Detective Tallman, informing the jury that Defendant "d[idn]'t deny it once, not once," and a short time later, reminding them again that Defendant "[d]oesn't deny [the allegations] just once." During direct examination of Detective Tallman, the prosecutor introduced and played the forty-minute taped interview of Defendant in which he invoked his right to remain silent. Then when asked, "Did [Defendant] give any reasons why he would be falsely accused of such a heinous crime?" Detective Tallman responded, "Not one." And when cross-examining Defendant regarding his conversation with Detective Tallman, the prosecutor directly asked: "[W]hy didn't you profess your innocence just like you did to the jury?" Perhaps most illustrative of the prosecutor's mindset was his suggestion during closing argument that Defendant, if innocent, should have professed his innocence during the interview. The prosecutor suggested to the jury that they put themselves in the position of Defendant, arguing:

> When confronted . . . you're gonna wonder why these accusations are coming if you're really innocent. You're gonna be like, 'wow, that's really crazy that this little girl would even come up with these schemes.' But the first thing you'd want to do is profess your innocence. And you didn't get any of that.

The natural and necessary impact upon the jury of each of the prosecutor's statements, especially taken together, was to prompt the jury to wonder what Defendant was hiding by invoking his right to remain silent. *See State v. Hennessy*, 1992-NMCA-069, ¶ 16, 114 N.M. 283, 837 P.2d 1366 (determining "whether the language of the prosecutor's questions on cross-examination and his comments in closing were such that the jury would naturally and necessarily have taken them to be comments on the exercise of the right to remain silent"), *overruled on other grounds by State v. Lucero*, 1993-NMSC-064, ¶ 16, 116 N.M. 450, 863 P.2d 1071.

**{17}**    Indeed, the prosecutor's theory of the case suggestively and unabashedly rested on the premise that Defendant's failure to proclaim his innocence in the face of R.S.'s accusations insinuates—if not commands—a conclusion of guilt. But as we hold today, a prosecutor's trial arsenal rightly excludes the fact of a defendant's invocation of silence for the straightforward reason that under the Fifth Amendment, no criminal defendant is compelled to say anything at all, much less profess his innocence, after he has invoked his right to remain silent. *Cf. In re Gault*, 387 U.S. 1, 47-48 (1967) ("The privilege can be claimed in any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory. [I]t protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used." (omission, internal quotation marks, and citation omitted)). We conclude that the prosecutor's comments during his opening statement and closing argument, as well as the testimony he elicited from Detective Tallman and Defendant, proactively utilized Defendant's invocation of his right to remain silent as indicium of his guilt, and pursuant to our ruling today violated the Fifth Amendment.

**D.    The Prosecutor's Comments on Defendant's Silence Constituted Fundamental Error**

**{18}**    Having concluded that the prosecutor's comments on Defendant's silence were constitutionally improper, we next consider whether they rendered Defendant's trial fundamentally unfair such that a new trial is warranted despite Defendant's failure to object. *DeGraff*, 2006-NMSC-011, ¶ 21 ("[I]t is fundamentally unfair and a violation of due process to allow an individual's invocation of the right to remain silent to be used against him or her at trial." (internal quotation marks and citation omitted)). "Where counsel fails to object, the appellate court is limited to a fundamental error review." *State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348. "[O]ur courts have been more likely to find reversible error when the prosecution's comment invades a distinct constitutional protection." *Id.* ¶ 27. "An error is fundamental if there is a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *DeGraff*, 2006-NMSC-011, ¶ 21 (internal quotation marks and citation omitted). "[M]ore direct prosecutorial comments on a defendant's invocation of the right to remain silent are more likely to be fundamental error." *Id.* Only when the "evidence of guilt is overwhelming, such that the prosecutorial impropriety is insignificant by comparison, [may] a conclusion that the error is not fundamental . . . be warranted." *State v. Pacheco*, 2007-NMCA-140, ¶ 18, 142 N.M. 773, 170 P.3d 1011 (internal quotation marks omitted).

**{19}**    Considered in sum, the prosecutor's comments on Defendant's silence during opening statement, direct examination of Detective Tallman, cross-examination of Defendant, and closing argument were cumulatively powerful. Indeed, the commentary was trial-spanning and suggestive of guilt. To reiterate, the State repeatedly invited the jury to infer Defendant's guilt from his invocation of his right to remain silent and his attendant failure to proclaim his innocence. It would be impossible to conclude in this instance that the prosecutor's comments on Defendant's silence were insignificant to

the jury in its deliberation, particularly given the fact that the evidence of Defendant's guilt otherwise hinged largely on the testimony and credibility of R.S. *See id.* ¶ 18 ("[I]mproper prosecutorial . . . commentary on a defendant's exercise of the constitutional right to remain silent is frequently regarded as a significant factor, sufficiently prejudicial in nature to constitute fundamental error."). We conclude instead that the prosecutor's reliance upon Defendant's invoked silence, and the implication the prosecutor urged the jury to draw therefrom, were distinctly prejudicial and warrant a determination of fundamental error and require reversal of Defendant's convictions.[4]

## E.     Retrial Is Not Barred by Double Jeopardy Principles Under *Breit*

**{20}**     Defendant further contends that the prosecutor's misconduct at trial was so extreme that retrial should be barred under double jeopardy principles. "The New Mexico Constitution, like its federal counterpart, protects any person from being 'twice put in jeopardy for the same offense.' " *Breit*, 1996-NMSC-067, ¶ 8 (quoting N.M. Const. art II, § 15); *see* U.S. Const. amend. V (providing that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb"). Generally, however, "the double jeopardy guarantee imposes no limitations whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside." *United States v. DiFrancesco*, 449 U.S. 117, 131 (1980) (internal quotation marks and citation omitted). As the United States Supreme Court has explained, "[i]t would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *Id.* (internal quotation marks and citation omitted).

**{21}**     An exception to this rule exists, however, in extreme circumstances of prosecutorial misconduct, specifically when "a defendant is goaded by prosecutorial misconduct to move for a mistrial" or to seek "reversal on appeal" in a manner so extreme as to undermine "the defendant's interest in having the prosecution completed by the original tribunal before whom the trial was commenced." *Breit*, 1996-NMSC-067, ¶¶ 2, 14, 22. In *Breit*, our Supreme Court held:

> Retrial is barred under Article II, Section 15, of the New Mexico Constitution, [(1)] when improper official conduct is so unfairly prejudicial to the defendant that it cannot be cured by means short of a mistrial or a motion for a new trial, [(2)] if the official knows that the conduct is improper

---

[4]Defendant also contends that the prosecutor committed misconduct by "improperly introducing evidence of prior bad acts, then using it to argue propensity[.]" Defendant lodged no objection at trial, but argues that the prosecutor's conduct was a direct violation of Rule 11-404(B) NMRA, and thus constitutes per se fundamental error. Defendant has cited no authority for this bald proposition, we assume none exists, and we decline to further address his argument in this regard. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists[.]"); *see also* Rule 12-321(B)(2)(c) (permitting an appellate court, in its discretion, to review unpreserved issue for fundamental error); *State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that appellate courts are under no obligation to review unclear or undeveloped arguments).

and prejudicial, and [(3)] if the official either intends to provoke a mistrial or acts in willful disregard of the resulting mistrial, retrial, or reversal.

*Breit*, 1996-NMSC-067, ¶ 32. But the remedy of barring retrial on double jeopardy grounds "applies only in cases of the most severe prosecutorial transgressions." *State v. McClaugherty*, 2008-NMSC-044, ¶ 25, 144 N.M. 483, 188 P.3d 1234 (internal quotation marks and citation omitted).

**{22}** We conclude that retrial is not barred based upon the prosecutor's trial conduct. Although under our holding today the State violated Defendant's Fifth Amendment rights, the prosecutor's reference to and use of Defendant's refusal to respond to police questions before he was arrested did not contravene then-established binding precedent. Indeed, the actions in question were those the United States Supreme Court sought to but did not resolve in *Salinas*. The record does not suggest, then, that the prosecutor knew his questions, comments, and argument were improper or in any way intended to provoke a mistrial, or that he acted in willful disregard of such under the second and third prongs of the *Breit* test. Indeed, Defendant never once objected to any of that which he now complains should bar his retrial. In contrast to *Breit*, where the prosecutor's misconduct was so "incessant[] and outrageous" that the district court judge's memorandum opinion outlining such was included as an appendix to the New Mexico Supreme Court's decision, here there is no such comparable record or evidence of knowing and willful misconduct by the prosecutor. *See Breit*, 1996-NMSC-067, ¶ 37. Rather, while we conclude today that the prosecutor's substantive use of the Defendant's silence is constitutionally impermissible and the prejudice associated therewith amounted to fundamental error, that conduct does not equate to the level of prosecutorial misconduct required to bar retrial under *Breit*. As such, retrial is not barred.

## II. Defendant's Intimidation of a Witness Conviction Is Barred by the Statute of Limitations

**{23}** Defendant argues that his conviction for intimidation of a witness must be reversed because the statute of limitations barred the prosecution of that charge. We agree.

**{24}** Intimidation of a witness is a third-degree felony. NMSA 1978, § 30-24-3(C) (1997). The time limit for bringing charges for a third-degree felony is "five years from the time the crime was committed." NMSA 1978, § 30-1-8(B) (2009). Defendant's intimidation of R.S. occurred in August 2008, and Defendant was not charged or indicted until 2016, which exceeds the applicable statute of limitations.

**{25}** The State argues only that the statute of limitations for prosecuting Defendant for intimidation of a witness was tolled under NMSA 1978, Section 30-1-9.1 (1987). According to the State, Section 30-1-9.1 applies "when the victim of any offense is a child." It does not. Section 30-1-9.1 provides, "[t]he applicable time period for commencing prosecution pursuant to Section 30-1-8 . . . shall not commence to run for

an alleged violation of [NMSA 1978,] Section 30-6-1 [(2009)], [NMSA 1978,] 30-9-11 [(2009),] or [NMSA 1978,] 30-9-13 [(2003)] until the victim attains the age of eighteen or the violation is reported to a law enforcement agency, whichever occurs first." By its plain language, Section 30-1-9.1 tolls the statute of limitations for prosecuting alleged violations of Sections 30-6-1 (abandonment or abuse of a child), 30-9-11 (criminal sexual penetration), and 30-9-13 (criminal sexual contact of a minor). It does not toll the statute of limitations for prosecuting an alleged violation of Section 30-24-3 (bribery or intimidation of a witness). Because Defendant's prosecution for intimidation of a witness exceeded the applicable limitations period of five years between when the crime was committed in August 2008 and when the information was filed in March 2016, Defendant's conviction on that charge is barred. *See State v. Kerby*, 2007-NMSC-014, ¶¶ 20, 27, 141 N.M. 413, 156 P.3d 704 (vacating the defendant's convictions that fell outside the applicable statute of limitations even though defense was not raised below because the defendant did not knowingly, intelligently, and voluntarily waive the defense).

### III.    Consideration of Defendant's Due Process and Double Jeopardy Challenges Shall Occur on Remand

**{26}**    Defendant argues that all of his CSPM convictions except one violate his due process and double jeopardy rights and were not supported by sufficient evidence because the State pursued a course-of-conduct theory of prosecution based on factually indistinguishable incidents. We leave these challenges for consideration by the district court on remand.

**{27}**    In its recent opinion in *Lente*, our New Mexico Supreme Court provided new guidance on evaluating due process, multiplicious double jeopardy, and sufficiency of the evidence challenges in "resident child molester" cases, a unique circumstance of abuse wherein "child victims in these cases are usually the sole witnesses of the crimes perpetrated and, because of their age and frequency of the sexual abuse to which they are subjected, cannot provide detailed accounts of the abuse but only general accounts of frequent sexual contact with the defendant." 2019-NMSC-020, ¶¶ 1-3. Under the *Lente* framework, courts first consider whether a defendant is charged with "carbon copy" counts, i.e., identically worded sex abuse charges that are in no way differentiated from one another, and thus, violate double jeopardy. *Id.* ¶¶ 13, 41-49 (explaining the "double jeopardy problems associated with unspecific, 'carbon copy' indictments").[5] Second, if the charging instrument passes constitutional muster, the trial evidence must then be sufficient to support multiple convictions. *Id.* ¶¶ 13, 68-70 (adopting three evidentiary requirements that must be met in order for an alleged victim's testimony to support multiple convictions in resident molester sex abuse cases).

---

[5]Each count of alleged CSPM (originally twenty-six counts) contained in the criminal information uniformly stated: "on or about August 15, 2008, [Defendant] did unlawfully and intentionally cause a [minor] to engage in sexual intercourse, cunnilingus, fellatio, or anal intercourse or cause penetration, to any extent and with any object[.]"

**{28}** Importantly, however, *Lente* also explained that in order for a defendant to challenge an indictment or criminal information on appeal on the basis Defendant now does in this case, he must have "filed pretrial objections to the [charging instrument] or demanded any additional pretrial specification of the charges"—i.e., seeking a bill of particulars—*before* trial. *Id.* ¶ 16. A defendant who fails "to object to the indictment on notice or due process grounds" is "precluded from first [doing so] after trial[.]" *Id.* Such is the case here. In his briefing on appeal, Defendant does not indicate when or even if he pursued a challenge to or sought specification of the charges against him under principles of due process or notice. Moreover, the State contends he failed to do so, and our review of the record supplies no such instance where he did. Given this, we decline to resolve Defendant's due process and double jeopardy challenges to the criminal information, or further apply *Lente*.[6] Nonetheless, and particularly given the issuance of *Lente* following Defendant's first trial, Defendant and the State are free to pursue whatever course of action they consider to be warranted under *Lente* on remand, including issues related to the remaining charges contained within the criminal information.

**CONCLUSION**

**{29}** For the foregoing reasons, we reverse Defendant's convictions for twenty-one counts of CSPM, one count of attempt to commit CSPM, and one count of intimidation of a witness, and remand for a new trial on the CSPM and attempted CSPM charges.

**{30} IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**

---

6We decline to address Defendant's challenge to the sufficiency of the evidence in light of our ruling in this regard.