IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2024-NMCA-075**

**Filing Date: July 23, 2024**

**No. A-1-CA-40820**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**AARON BAHR,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Van Snow, Assistant Attorney General
Albuquerque, NM

for Appellee

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellant

## OPINION

**DUFFY, Judge.**

**{1}**    Following a jury trial, Defendant Aaron Bahr was convicted on one count of criminal sexual penetration of a minor in the first degree (child under thirteen years of age) (CSPM), contrary to NMSA 1978, Section 30-9-11(D)(1) (2009), and two counts of attempted CSPM, contrary to Section 30-9-11(D)(1) and NMSA 1978, Section 30-28-1(A) (1963, amended 2024). On appeal, Defendant argues that (1) the State presented insufficient evidence to support his conviction for CSPM, and (2) the statute of limitations barred one of his convictions for attempted CSPM. We affirm.

**BACKGROUND**

**{2}** The timeline of events is relevant to the statute of limitations issue and we briefly set forth the relevant factual and procedural background. Defendant was married to T.B. and together they had a daughter, I.B. T.B. also had a daughter from a previous relationship, Y.B. Defendant would watch the children while T.B. was at work, which was typically in the evening. Y.B. testified that Defendant twice attempted to sexually assault her. The first time occurred while the family was living in Bloomfield between 2011 and 2017, and the second time occurred while the family was living in Aztec in 2019. Y.B. did not immediately tell anybody about these incidents because Defendant told her he would continue to do it and she was scared that no one would believe her.

**{3}** Y.B. testified that she also witnessed Defendant sexually assault I.B while the family was living in Aztec. Y.B. stated that, immediately after the incident, she and I.B. went to their grandmother's house next door. They told her what happened and wrote a letter about the incident. After T.B. got home from work, Y.B. and I.B. told her what happened. T.B. then confronted Defendant, who claimed that nothing happened and told T.B. that she was "crazy" and "sick in the head" for thinking that he did something to I.B. The next morning, T.B. asked Y.B. to confirm what happened the night before, but Y.B. stated that she made everything up. At trial, Y.B. testified that she lied to her mother because she was scared that Defendant would do the same thing to I.B. again. T.B. did not report the incident to law enforcement at that time.

**{4}** Defendant and T.B. separated in November 2019 and at that time, Defendant left New Mexico to live in Arizona. T.B. proposed sending the children to visit Defendant in Arizona. Y.B. became upset and questioned why they had to go to Arizona and who would be around the children. Y.B. then brought up her previous allegations against Defendant and stated T.B. could not let the children visit Defendant. After this conversation, T.B. contacted the sheriff's department. Y.B. and I.B. underwent a safehouse interview, and two days later, on July 10, 2020, the State charged Defendant by criminal complaint with four counts of CSPM (Counts 1-4) and one count of bribery or intimidation of a witness (Count 5).

**{5}** Trial began on June 29, 2022. After the conclusion of the first day of trial, the State filed an amended criminal information that changed Counts 1 and 2 from CSPM to *attempted* CSPM against Y.B., and also modified the charging periods for both counts. The jury convicted Defendant on both counts of attempted CSPM against Y.B. and one count of CSPM against I.B. The district court sentenced Defendant to twenty-seven years' imprisonment: nine years for each count of attempted CSPM running concurrently, and eighteen years for the CSPM conviction running consecutively to the other counts. Defendant appeals.

**DISCUSSION**

**I.      Sufficient Evidence Supported Defendant's Conviction for CSPM**

**{6}**     Defendant first challenges the sufficiency of the evidence supporting his conviction for CSPM. When presented with a sufficiency challenge, "[w]e review whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). "[W]e must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "So long as a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions." *Garcia*, 2011-NMSC-003, ¶ 5 (emphasis, internal quotation marks, and citation omitted).

**{7}**     In order to convict Defendant of CSPM, the State was required to prove that (1) Defendant caused the insertion to any extent of his penis into the vagina and/or vulva of I.B.; (2) I.B. was a child under the age of thirteen; and (3) this happened in New Mexico on or between February 1, 2018 and February 28, 2018. *See* UJI 14-957 NMRA; *see also State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured.").

**{8}**     Defendant limits his challenge to the first element. He contends that Y.B. was the only witness to testify about the incident and her testimony failed to establish that penetration occurred. According to Defendant, Y.B.'s testimony "continuously states that [Defendant] tried to or was trying to commit criminal sexual penetration [but that] Y.B. was unable to testify that any penetration occurred." We disagree that Y.B.'s testimony provided the only evidence supporting the charge and conclude that the evidence presented was sufficient to establish the first element of the offense.

**{9}**     Y.B. testified that on the day of the incident, she was inside the house when Defendant took I.B. to his bedroom. After hearing I.B. screaming from the bedroom, Y.B. tried to open the bedroom door, but it was locked. Y.B. then went outside and looked into the bedroom through a window. She testified that Defendant only had a shirt on, while I.B. was wearing a dress. Y.B. testified that she saw part of Defendant's penis and that I.B. was on the bed while Defendant tried to insert his penis in I.B.'s vagina. Y.B. also testified that I.B. was screaming and crying while Defendant tried to insert his penis in her vagina. Y.B. went back inside to try to get I.B. out of Defendant's bedroom. Defendant answered the door and stated that I.B. was fine and had fallen.

**{10}**     Y.B. and I.B. then went to their grandmother's house next door. Y.B. testified that while at their grandmother's house, I.B. complained that her vagina was hurting, so Y.B grabbed ice and put it on I.B.'s vagina. When Defendant was interviewed by a detective about the incident, Defendant conceded that I.B.'s vagina was hurting that day, but he explained that I.B. had hit her "undercarriage" on her bike and her "junk" was hurting.

**{11}** Based on this evidence, the jury could rationally have found that Defendant inserted his penis into the vagina and/or vulva of I.B. "to any extent." UJI 14-957. Even though Y.B. testified that she only saw Defendant attempting to penetrate I.B., the inference that Defendant actually penetrated I.B. "to any extent" is supported by Y.B.'s testimony that I.B. complained her vagina was hurting while at their grandmother's house and Defendant's acknowledgment of the same. Indulging all reasonable inferences in support of the guilty verdict, this evidence was enough for the jury to infer that I.B.'s vagina hurt because Defendant had inserted his penis into her vagina and/or vulva "to any extent." Accordingly, we affirm Defendant's conviction for CSPM.

## II. Defendant's Conviction for Attempted CSPM (Count 1) Is Not Barred by the Statute of Limitations

**{12}** Defendant contends that one of his convictions for attempted CSPM against Y.B. (Count 1) is barred by the applicable statute of limitations. Attempted CSPM is a second-degree felony subject to a six-year limitations period. *See* NMSA 1978, § 30-1-8(A) (2009, amended 2022) (stating that the criminal charges for second-degree felonies must be filed "within six years from the time the crime was committed"); § 30-9-11(D)(1); § 30-28-1(A). Defendant was originally charged on July 10, 2020,[1] and contends he cannot be prosecuted for conduct occurring more than six years before that date, i.e., conduct occurring before July 10, 2014. Defendant also notes that the charging period for Count 1 (January 1, 2013 to December 31, 2017) on its face includes time that falls outside the limitations period.[2] The State argues that the statute of limitations for Count 1 was tolled under either NMSA 1978, Section 30-1-9.1 (1987) (tolling the statute of limitations for certain crimes against children until the victim turns eighteen or the violation is reported to law enforcement), or NMSA 1978, Section 30-1-9(A) (1963) (stating that time when the defendant is not usually and publically a resident within the state will not be included in the time limitation), and the conduct at issue occurred within the limitations period.

**{13}** We apply a de novo standard of review to determine whether Section 30-1-9.1 or Section 30-1-9 operates to toll the statute of limitations for Count 1, and whether the State's prosecution was timely. *See State v. Kerby*, 2007-NMSC-014, ¶ 11, 141 N.M. 413, 156 P.3d 704. For the reasons set forth below, we conclude that Section 30-1-9(A) applies and tolled the statute of limitations beginning in November 2019. Because the

---

[1]Defendant states that he was charged on September 15, 2020, the date the criminal information was filed in the district court. The record indicates, however, that a criminal complaint was originally filed in magistrate court on July 10, 2020, and was bound over to the district court two months later.
[2]Defendant did not raise the statute of limitations below, although we observe that the issue did not arise until midway through trial when the State amended Count 1 from CSPM to attempted CSPM. While Defendant urges us to review the matter under our fundamental error standard of review, our Supreme Court has said that "the statute of limitations is a substantive right that may only be waived by a defendant after consultation with counsel, and only if the waiver is knowing, intelligent, and voluntary." *State v. Kerby*, 2007-NMSC-014, ¶ 18, 141 N.M. 413, 156 P.3d 704. As there is no indication that Defendant waived the right, Defendant is permitted to raise the issue for the first time on appeal. *State v. Hill*, 2008-NMCA-117, ¶ 7, 144 N.M. 775, 192 P.3d 770.

undisputed evidence at trial showed that the crime occurred within the limitations period, the prosecution was timely.

## A.  Section 30-1-9.1

{14}  Section 30-1-9.1 provides that the time period for commencing prosecution shall not begin to run for (1) an alleged abandonment or abuse of a child, contrary to NMSA 1978, Section 30-6-1 (2009); (2) CSPM, contrary to Section 30-9-1; or (3) criminal sexual contact of a minor, contrary to NMSA 1978, 30-9-13 (2003) "until the victim attains the age of eighteen or the violation is reported to a law enforcement agency, whichever occurs first." Section 30-1-9.1. The State originally charged Defendant in Count 1 with CSPM—a crime that is expressly tolled under Section 30-1-9.1. However, the State amended the charge to *attempted* CSPM during trial.

{15}  The State argues that Section 30-1-9.1 applies to toll the statute of limitations for *attempted* CSPM because it is a lesser included offense and necessarily requires proof of an attempted violation of the underlying statute. We addressed a similar argument in *State v. Costillo*, 2020-NMCA-051, ¶ 25, 475 P.3d 803, where the State argued that Section 30-1-9.1 tolled the statute of limitations for bribery or intimidation of a witness, contrary to NMSA 1978, Section 30-24-3 (1997). We held that by its plain language, Section 30-1-9.1 only tolls the statute of limitations for those felonies identified in the statute: abandonment or abuse of a child (Section 30-6-1), CSPM (Section 30-9-11), and criminal sexual contact of a minor (Section 30-9-13). *Costillo*, 2020-NMCA-051, ¶ 25. Because bribery or intimidation of a witness was not expressly included in Section 30-1-9.1, we held that it did not toll the statute of limitations for that crime. *Costillo*, 2020-NMCA-051, ¶ 25.

{16}  The same is true here: attempted CSPM is not included among the crimes identified in Section 30-1-9.1. We reaffirm that Section 30-1-9.1 is clear and unambiguous in its scope, and by its express terms applies to toll the statute of limitations for alleged violations of three specifically identified crimes. *See Costillo*, 2020-NMCA-051, ¶ 25. Section 30-1-9.1 does not expressly apply to attempts of those crimes. *See State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125 (stating that when interpreting a statute, our primary objective is to give effect to the Legislature's intent, and "[i]n discerning legislative intent, we look first to the language used and the plain meaning of that language"). The State does not argue that we need to depart from the plain language of Section 30-1-9.1 in order to resolve an ambiguity or uncertainty. Rather, the State asks us to broaden the scope of the tolling provision beyond what is expressly provided. This we cannot do. "We will not read into a statute any words that are not there, particularly when the statute is complete and makes sense as written." *Trujillo*, 2009-NMSC-012, ¶ 11; *see State v. McWhorter*, 2005-NMCA-133, ¶ 5, 138 N.M. 580, 124 P.3d 215 ("If the language of the statute is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation."). As in *Costillo*, we conclude that Section 30-1-9.1 does not toll the statute of limitations for crimes not expressly listed, and consequently, does not toll the statute of limitations for prosecuting attempted CSPM.

**B.     Section 30-1-9(A)**

**{17}**   The State also argues that the statute of limitations for Count 1 was tolled under Section 30-1-9(A), which provides:

> If after any crime has been committed the defendant shall conceal [themself], or shall flee from or go out of the state, the prosecution for such crime may be commenced within the time prescribed in Section . . . 30-1-8 . . . , after the defendant ceases to conceal [themself] or returns to the state. No period shall be included in the time of limitation when the party charged with any crime is not usually and publicly a resident within the state.

The State asserts that this provision applies because Defendant left New Mexico and resided in Arizona from November 2019 until he was charged in July 2020.

**{18}**   Defendant argues that Section 30-1-9 does not toll the statute of limitations because the State offered no evidence that he affirmatively attempted to avoid prosecution. Our Supreme Court previously rejected the same argument in *State v. Cawley*, 1990-NMSC-088, ¶ 7, 110 N.M. 705, 799 P.2d 574, holding that "[o]ur [L]egislature intended [Section 30-1-9] to foreclose the barring of a prosecution due to the voluntary absence from the state by a criminal offender." In *Cawley*, the defendant was charged in September 1988 for a rape that allegedly occurred in May 1968. *Id.* ¶ 3. Between the dates of the alleged crime and the filing of the criminal complaint, the defendant left New Mexico and resided in Texas for approximately eleven years. *Id.* He claimed that Section 30-1-9 "should not be applied in his case because state law enforcement officials could have used information retrieval systems to detect his whereabouts," and "his absence did not prevent the state from bringing him to trial within the ten-year limitation period." *Cawley*, 1990-NMSC-088, ¶ 5. The Court determined that the language of Section 30-1-9 was clear and unambiguous, and "places the citizenry on notice that the criminal statute of limitations will be tolled when a criminal suspect goes out of state." *Cawley*, 1990-NMSC-088, ¶ 10 (alteration, internal quotation marks, and citation omitted). In so holding, the Court rejected the defendant's assertion that the tolling provision should apply "only to those defendants . . . who voluntarily conceal themselves from law enforcement with the intention of avoiding prosecution." *Id.*

**{19}**   *Cawley* makes clear that to invoke the tolling provision in this case, the State need only show that Defendant was voluntarily absent from the state. *See id.* The State presented evidence that Defendant left New Mexico and moved to Arizona in November 2019 and was still living in Arizona when he was originally charged. Consequently, the statute of limitations for prosecuting Defendant on Count 1 was tolled beginning in November 2019 when Defendant left New Mexico and moved to Arizona. In conjunction with the six-year limitations period for prosecuting attempted CSPM, Defendant could be prosecuted for conduct occurring between November 2013 and November 2019.

**{20}**    This brings us to the final issue presented in this appeal: the jury instruction for Count 1 allowed the jury to convict Defendant for attempted CSPM occurring between January 1, 2013 and December 31, 2017, and thus included a period of approximately ten months (from January 1, 2013 to October 31, 2013) that fell outside the limitations period. The State argues that we can affirm Defendant's conviction based upon the undisputed evidence presented at trial that established the conduct underlying Count 1 occurred on or after November 2013, within the limitations period. We agree with the State.

**{21}**    Although New Mexico courts do not appear to have previously encountered a factual scenario where the charging period for the conviction is partially within and partially beyond the applicable statute of limitations, our Supreme Court has articulated principles that guide our analysis. When presented with a statute of limitations question, "[w]e look at the trial proceedings to determine if the facts relevant to the statute of limitations were in dispute." *Kerby*, 2007-NMSC-014, ¶ 11. When facts relevant to a statute of limitations issue are not in dispute, we may review the statute of limitations issue de novo as a question of law. *Id.*; *see id.* ¶ 19 (quoting *People v. Williams*, 981 P.2d 42, 45 (Cal. 1999) for the proposition that the court may "'determine from the available record whether the action is barred'"); *see also People v. Smith*, 120 Cal. Rptr. 2d 185, 194 (Ct. App. 2002) (observing that *Williams* clarified that "when an appellate court is reviewing a statute of limitations question after a conviction for the charged offenses, the proper question is whether the record demonstrates that the crime charged actually fell within the applicable statute of limitations"); *People v. Price*, 66 Cal. Rptr. 3d 595, 602-03 (Ct. App. 2007) (applying the *Williams* framework and concluding that the defendant's prosecution for burglary was timely because the record clearly showed that the charging document was issued well within the applicable limitations period); *People v. Delgado*, 104 Cal. Rptr. 3d 495, 502-04 (Ct. App. 2010) (utilizing the procedure from *Williams* and affirming the defendant's convictions because the appellate court was able to determine from the available record that the actions were not time-barred).

**{22}**    The State argues that the record demonstrates the attempted CSPM occurred after November 2013, within the limitations period. At trial, Y.B. testified that she lived in Bloomfield and was in kindergarten or first grade when the attempted CSPM occurred. The record established that Y.B. was born in November 2008, that the family lived in Bloomfield from 2011 through 2017, and that Y.B. was five years old when she started school. Based on this evidence, Y.B. would have started kindergarten in the fall of 2014, and therefore, Defendant's conduct would have occurred either in 2014 or 2015.

**{23}**    Defendant, in response, does not direct us to any other portion of the trial record that would place his conduct outside the limitations period, nor has he shown that the relevant facts are disputed. Based on the undisputed evidence of record, we are able to determine that the conduct underlying Count 1 occurred in or after 2014, within the applicable limitations period, and therefore the action was not time-barred. We accordingly affirm Defendant's conviction on Count 1.

**CONCLUSION**

**{24}**   For the foregoing reasons, we affirm.

**{25}   IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**MICHAEL D. BUSTAMANTE, Judge,**
**Retired, sitting by designation**