809 P.2d 630

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Russell FINCHUM,
Defendant–Appellant.**

**No. 19210.**

Supreme Court of New Mexico.

April 17, 1991.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

**OPINION**

SOSA, Chief Justice.

Defendant-appellant, Russell Finchum, was convicted by a jury of first degree murder, tampering with evidence and ag-

gravated battery. He was sentenced concurrently to life imprisonment for the murder, eighteen months for tampering with evidence and 364 days for the aggravated battery. The battery charge arose out of a different incident than the murder charge.

The victim was found dead in a motel room in Albuquerque. Finchum and the victim had been acquaintances. The weekend before the killing, Finchum and the victim had argued over whether Finchum should take drugs that the victim offered. When Finchum refused, the victim got angry with Finchum and treated him "disrespectfully." A few days thereafter, Finchum was heard to have told various people that he was going to get even with the victim for having treated Finchum disrespectfully. Medical testimony established that the victim's death reasonably could have been caused by blows from a meat hook known to have been in Finchum's possession. Following discovery of the victim's body, Finchum told several people that he killed the victim and told one such person to help him dispose of the meat hook.

On appeal, Finchum alleges the following errors:

(1) The court erred in failing to grant Finchum's motion to sever the aggravated battery charge from the murder charge. The battery occurred some two weeks after the murder, and involved an incident where Finchum allegedly choked his girlfriend and told her, "I'm going to kill you like I did the guy in the hotel."

Finchum argues that under the holding of *State v. Gallegos*, 109 N.M. 55, 63–64, 781 P.2d 783, 91–92 (Ct.App.), *cert. denied*, 109 N.M. 154, 782 P.2d 1351 (1989), the charges should have been separately tried because evidence of the choking incident would not have been admissible in a separate murder trial. Finchum concedes that the statement uttered during the battery would be admissible during a separate murder trial, but argues that evidence of the battery itself would not be admissible. The State disagrees, contending that not only the admission but also the evidence of the aggravated battery would have been ad-

missible, relying on the "res gestae" exception of the hearsay rule set forth in *State v. Mottola*, 84 N.M. 414, 504 P.2d 22 (Ct. App.1972). According to the State, the choking placed the contemporaneous statement into the proper context for the jury.

(2) Finchum asserts error in the court's allowing the State to impeach Finchum's statement on cross-examination that he had never told "anybody that [he] had killed somebody." Impeachment took place as follows. The prosecutor sought and obtained an in camera conference during which Finchum was excluded. The prosecutor explained that she did not want Finchum present to hear what she was about to say so that he could prepare an explanation. She stated to the judge that she had a medical report prepared by Finchum's doctor, written during Finchum's physical examination four months before the killing. On the face of the report Finchum is noted as having told the doctor that he (Finchum) had killed someone. The judge ruled that he would permit impeachment by use of the report. On returning to the courtroom, the judge summarized the nature and substance of the in camera conference.

Finchum contends that the statement in the report concerned a collateral matter, and thus on the strength of *State v. Ross*, 88 N.M. 1, 4, 536 P.2d 265, 268 (Ct.App. 1975), the prosecutor was bound by Finchum's answer and could not introduce extrinsic evidence to prove that the witness did in fact make such a statement. The State agrees with this general proposition, but asserts that use of the statement to refresh Finchum's recollection on the matter did not amount to the use of extrinsic evidence. Further, the State argues that because the statement was not offered for the truth of the matter asserted (that Finchum had in fact killed someone), but only to test Finchum's credibility, there is no hearsay dilemma raised by use of the statement.

(3) Finchum contends that his absence from the in camera conference erroneously excluded him from a critical stage of the proceedings. In support of the argument, he cites the following cases: *State v. Wil-*

*son,* 109 N.M. 541, 787 P.2d 821 (1990); *Hovey v. State,* 104 N.M. 667, 726 P.2d 344 (1986); *State v. McDuffie,* 106 N.M. 120, 739 P.2d 989 (Ct.App.1987). Finchum acknowledges that his presence is not constitutionally required if an in camera conference deals with questions of law, but asserts that this particular conference covered "mixed questions of law and fact." The State argues that the conference dealt solely with a question of law, and thus following the holdings of *United States v. Veatch,* 674 F.2d 1217, 1225–26 (9th Cir. 1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982), and *Snyder v. Massachusetts,* 291 U.S. 97, 106–07, 54 S.Ct. 330, 332–33, 78 L.Ed. 674 (1934), no fundamental or other error occurred.

(4) The trial court refused to grant Finchum's motion for a mistrial following his objection to the following exchange during direct examination of a state witness:

Q. Now what ultimately led you to tell the police what you knew about this case[?]

A. Somebody called crimestoppers, and [the police] had come over and told us the whole story, exactly how it happened.

Finchum contends this statement suggested to the jury that "some undisclosed source had claimed" Finchum committed the murder, thus bolstering the impression that several people knew of Finchum's guilt. He argues that when he moved for mistrial, the prosecution offered to explain later through a police witness why the "crimestopper's tip" was injected into the case but that the prosecution never followed through on this offer. The State contends that the court's denial of mistrial was not conditioned on this offer, that Finchum did not renew his motion when the offer went unfulfilled, and that during the police witness' cross-examination Finchum himself failed to pursue the matter. Nor, the State argues, did Finchum request an admonition from the court instructing the jury to disregard the reference to "crimestoppers."

(5) Finchum argues that the State's asking him on cross-examination if he had incorrectly reported his address to his probation officer constituted reversible error, because under SCRA 1986, 11–608(B), dealing with attacking a witness' credibility for truthfulness, Finchum's failure to report his correct address may merely have been negligent. The State counters by showing that Finchum in writing declared to his probation officer that he was living at a false address.

(6) Finchum argues that the court's allowing the probation officer to testify on the issue of whether there were traces of marijuana in the victim's body constitutes reversible error. A medical expert had originally testified to the contrary, disputing Finchum's story that the victim had smoked marijuana the night before the killing. On rebuttal the state used the probation officer instead of the medical expert to testify on this point. Finchum concedes that qualification of an expert is a matter of discretion with the judge and that training and education can qualify a person as an expert. The State argues that the record shows that the probation officer had received appropriate education in drug testing.

(7) Finchum argues that the trial court abused its discretion in admitting into evidence "gory" photographs of the victim's body. The State argues that the photos were relevant to the issue of first-degree versus second-degree murder and to corroborate prior medical testimony as to the type of wounds the victim received.

(8) Finally, Finchum argues that the cumulative effect of the court's errors deprived him of a fair trial. The State contends that there were no errors, or if there were any they were harmless, and thus the doctrine of cumulative error does not apply.

■ Having considered the record, the briefs on appeal and oral arguments, we affirm. We are persuaded by the State that if any errors were committed in this case they were harmless. *See generally Sanchez v. State,* 103 N.M. 25, 27, 702 P.2d 345, 347 (1985); *State v. Moore,* 94 N.M. 503, 504, 612 P.2d 1314, 1315 (1980). If there was any improperly admitted evidence it was insignificant in comparison to

substantial evidence that supported the conviction, and there was no substantial conflicting evidence to discredit the State's case.

■ We cannot say that the trial court abused its discretion in denying Finchum's motion to sever. *See State v. Burdex*, 100 N.M. 197, 668 P.2d 313 (Ct.App.), *cert. denied*, 100 N.M. 192, 668 P.2d 308 (1983). Nor does *State v. Gallegos*, 109 N.M. 55, 63–64, 781 P.2d 783, 91–92 (Ct.App.), *cert. denied*, 109 N.M. 154, 782 P.2d 1351 (1989) require a different conclusion than the one we draw herein. Here, Finchum concedes that the utterance would have been admissible in a separate trial, and we agree with the State that it would have been within a trial court's discretion in a separate trial to admit evidence of the simultaneous battery—by any of several theories, res gestae or "context" being one of them. Further, we fail to see how Finchum has been prejudiced. No doubt the jury was at least as disposed to convict by the utterance as by evidence of the choking, if not more so.

We similarly find the remainder of Finchum's arguments on appeal to be without merit. Accordingly, the conviction and sentence are affirmed.

IT IS SO ORDERED.

MONTGOMERY and FRANCHINI, JJ., concur.