1999-NMCA-146

993 P.2d 96

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Pedro ORTIZ–BURCIAGA,
Defendant–Appellant.**

**No. 19591.**

Court of Appeals of New Mexico.

Sept. 10, 1999.

Certiorari Denied, No. 26,004, Nov. 15, 1999.

**384**

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, for Appellee.

Robert E. Tangora, Robert E. Tangora, L.L.C., Santa Fe, for Appellant.

*OPINION*

APODACA, Judge.

{1} Defendant was convicted by a jury of criminal sexual contact of a minor in violation of NMSA 1978, § 30–9–13(A)(1) (1991), and criminal sexual penetration of a minor in violation of NMSA 1978, § 30–9–11(C) (1995). He raises several issues on appeal. We consider two of those issues, combined, dispositive of this appeal—whether (1) a judge who was not presiding at trial but was a spectator improperly influenced the jury by hugging the victim's grandmother in the jury's presence, and (2) the trial court deprived Defendant of his right to present a witness on his own behalf. Without deciding whether either of those two issues, standing alone, gave rise to reversible error, we determine that, together, they formed the basis for cumulative error requiring reversal. Because Defendant would be entitled to a dismissal of the charges on remand if the evidence adduced at trial was insufficient to support his convictions, we must address the sufficiency-of-the-evidence issue raised by Defendant. *See State v. Benavidez,* 1999–NMCA–053, ¶ 2, 127 N.M. 189, 979 P.2d 234, *cert. granted,* 127 N.M. 391, 981 P.2d 1209 (1999) (providing that a defendant would be afforded greater relief on appeal if sufficient evidence did not support his conviction). For the same reason, we must address the speedy trial issue. In that regard, we conclude that sufficient evidence supported Defendant's convictions and that Defendant's right to a speedy trial was not violated. Because of our disposition, we need not reach Defendant's other issues.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} Defendant was charged with five counts of criminal sexual penetration of a minor under thirteen years old. In preparation for trial, the parties participated in a videotaped deposition of the victim. Former Judge Benjamin S. Eastburn presided at the videotape deposition, although he did not preside at trial. During portions of the deposition, the victim's grandmother sat with her while she was questioned. Toward the end of the questioning, the victim became

distraught and sought comfort in her grandmother's lap. The State played the unedited videotape deposition in its case in chief at trial. Judge Eastburn, the victim, and the victim's grandmother were visible on the videotape. During portions of the deposition, Judge Eastburn was shown wearing his judicial robe.

{3} Later, during Defendant's trial, Judge Eastburn entered the courtroom as a spectator and he and the victim's grandmother hugged each other in the presence of the jury. Although neither Defendant nor his counsel was aware of this incident, it was, however, observed by some of the jurors.

{4} After the jury had returned its verdict, defense counsel learned of the incident and moved for a new trial. Upon questioning, five members of the jury panel reported that they had witnessed the hugging incident between Judge Eastburn and the child's grandmother. The trial court, however, denied Defendant's motion for a new trial stating: "It was obviously something we would all like to try to avoid. Unfortunately it happened, but I don't think it's really to the level where I should order a new trial, so I'm going to deny your motion for a new trial."

{5} At trial, the victim's videotaped deposition was introduced as evidence. She testified specifically about two contacts with Defendant, before Christmas of 1995 and the week before his arrest in March 1996. She also described other occurrences in less detail. The examining physician stated that some evidence indicated sexual abuse, but he was unable to conduct a complete examination. The victim's teacher testified concerning the victim's behavior before and after the alleged sexual abuse. She stated that the victim had symptoms of attention deficit disorder before the date of the first alleged contact but that the symptoms increased around that time. The State's expert psychological witness testified that the victim suffered from posttraumatic stress disorder and concluded that her behavior was a sign of sexual abuse.

{6} The victim's treating counselor also testified as an expert witness for the State. She stated that the victim's description of sexual intercourse was advanced for her age, which was another indicator of sexual abuse. The victim was in the second grade when the alleged incidents occurred. The counselor referred to the victim's fear of Defendant—"[S]he's constantly saying that Pedro's gonna hurt her. He's gonna come back and hurt her somehow. External cues, there were certain colors he wore in his garments that she was afraid of. She was afraid of the trailer it happened in."

{7} At the close of the State's case, Defendant moved for a directed verdict. The trial court granted the motion on three of the five counts in the indictment. Defendant later called his sister-in-law, Jo Ortiz, as a witness, who testified about her interactions with the victim and the victim's mother. The sister-in-law stated that the victim visited her after the alleged abuse and that she appeared normal. The witness then began to testify concerning the victim's sexual knowledge before the alleged abuse, but the State objected on hearsay grounds. A bench conference followed, and defense counsel proffered that the sister-in-law would testify about her conversation with the victim in which the victim described sexual intercourse in graphic detail. Defendant argued that the statement was not offered to prove the matter asserted—how people have intercourse. Defendant instead contended that he sought to use the testimony to show the victim's advanced understanding of sex before the dates of the alleged sexual abuse, thus rebutting the conclusion of the victim's treating counselor that the victim's advanced understanding of sex indicated sexual abuse. The trial court, however, sustained the State's hearsay objection and excluded the testimony.

{8} Defendant testified on his own behalf. He stated that he always treated the victim as a father would and denied her accusations.

## II. DISCUSSION

### A. Cumulative Error

■ {9} Defendant argues cumulative error arising from several of the issues raised on appeal, including Judge Eastburn's alleged improper influence on the jury and

the exclusion of the testimony of Defendant's sister-in-law. *See State v. Wilson*, 109 N.M. 541, 545–47, 787 P.2d 821, 825–27 (1990) (reversing conviction under doctrine of cumulative error where, among other errors, judge's improper communications with juror prejudiced the defendant). "We must reverse any conviction obtained in a proceeding in which the cumulative impact of irregularities is so prejudicial to a defendant that he is deprived of his fundamental right to a fair trial. U.S. Const. amend. VI, XIV; N.M. Const. art. II, § 14." *State v. Martin*, 101 N.M. 595, 601, 686 P.2d 937, 943 (1984). We agree with Defendant that cumulative error from these irregularities together supports reversal here. We believe the prejudicial effect of these errors, taken together, had considerable impact on this case, which, as in other child abuse cases, turns on the jury's determination of the credibility of the defendant and the young victim.

### 1. Improper Influence on the Jury

{10} First, we determine that the hugging incident gave rise to a presumption of prejudice that the State failed to rebut. *See State v. Doe*, 101 N.M. 363, 367, 683 P.2d 45, 49 (Ct.App.1983) ("If the court finds an improper communication occurred, the State must rebut the presumption [of prejudice]."). The trial court questioned the jurors concerning this incident. *See id.* at 366, 683 P.2d at 48 (providing that the trial court may conduct an evidentiary hearing concerning the possibility of jury prejudice from extraneous material). Five of the jurors testified that they saw Judge Eastburn hug the victim's grandmother. Based on the hugging incident observed by the jurors, it is reasonable to conclude that they were influenced by it.

{11} Rule 11–606(B) NMRA 1999 outlines the limited instances in which a member of the jury may be called upon to testify as to the validity of a verdict. Specifically, Rule 11–606 provides, in part:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything

upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

{12} The State argues on appeal that there was no improper communication and that the hugging did not improperly influence the jurors. We believe, however, that such a display could well have had an improper influence on the jury.

### 2. Exclusion of Testimony

{13} We next determine that the trial court erred by precluding Defendant's sister-in-law from testifying concerning the victim's advanced sexual knowledge existing before the date of the alleged abuse. At trial, the State objected to this testimony on hearsay grounds. Defendant asserted that he was not offering the testimony for the truth of the matter asserted. Rather, Defendant sought to refute the testimony of the State's expert witnesses implicating sexual abuse by Defendant by showing that the victim had advanced sexual knowledge prior to contact with Defendant. The State continued to object on hearsay grounds. The trial court sustained the objection, and defense counsel asked to approach the bench to make an offer of proof. The taped transcript of the ensuing discussion at the bench is inaudible. Pursuant to Rule 12–211(H) NMRA 1999 (stating that the appellant shall provide a report of the evidence or proceedings where a taped transcript is inaudible), Defendant filed a statement of his recollection of the bench conference. The statement asserts that defense counsel advised the trial court that the sister-in-law would testify about a conversation she had with the victim in which the victim "described in extremely graphic and vulgar terms how a man would transmit sperm in order to impregnate a woman." This statement indicates that Defendant argued that the evidence was relevant to rebut the implication from the expert witnesses'

testimony that the victim's knowledge of sexual terminology supported the claim of sexual abuse. The trial court nevertheless sustained the State's objection.

▆ {14} On appeal, Defendant continues to argue that the sister-in-law's statements were not hearsay. The State apparently now concedes on appeal that Defendant's hearsay argument is supportable—that the testimony was not being offered for the truth of the matter asserted. Instead, the State claims that, because the record does not reflect the reason why the trial court excluded the testimony, we can affirm on the basis that the trial court could have determined the evidence was more prejudicial than probative.

{15} First, we agree that the testimony was not hearsay. Rule 11–801(C) NMRA 1999 defines hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Defendant did not offer the testimony to prove how intercourse is performed or pregnancy occurs. *See Jim v. Budd,* 107 N.M. 489, 491, 760 P.2d 782, 784 (Ct.App.1987) (holding that statements "not offered for the truth of the words uttered" were not hearsay). Rather, Defendant intended to use the testimony to show the victim's advanced sexual knowledge and to refute the State's expert testimony.

▆ {16} As we noted, the State nonetheless argues that, even if the testimony was relevant, *see* Rule 11–402 NMRA 1999 (providing that "[a]ll relevant evidence is admissible, except as otherwise provided by constitution, by statute, by these rules or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible."), its prejudicial effect outweighed its probative nature. *See* Rule 11–403 NMRA 1999 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."); *see also State v. Snyder,* 1998–NMCA–166, ¶ 8, 126 N.M. 168, 967

P.2d 843 ("Generally, [the Court of Appeals] may affirm the district court's ruling on grounds not relied upon below unless the appellant did not have a fair opportunity to present admissible evidence in the district court concerning the facts on which those grounds depend."). The State argues that the sister-in-law's testimony referring to the victim's description of sexual activity in graphic and vulgar terms would be "inflammatory and unfairly ·prejudicial, possibly leading to confusion of the issues."

{17} We disagree. Following the balancing test of *State v. Lucero,* 118 N.M. 696, 702, 884 P.2d 1175, 1181 (Ct.App.1994), we note that defendant did not seek to show that the victim was already abused. *See id.* To the contrary, he sought to rebut the expert testimony that the victim's knowledge indicated she was sexually abused. Finally, this testimony was not cumulative of other evidence concerning the victim's understanding of sex. *Cf. id.* (holding that evidence of the victim's "past sexual conduct would be cumulative of other evidence regarding [the defendant's] mistake of fact defense"). Consequently, in our view, if the trial court had weighed the probative value of the evidence against its inflammatory or prejudicial nature, which the court did not do, it could not properly have found that the inflammatory or prejudicial nature outweighed the probative value.

▆ {18} The State also contends Defendant failed to show that the trial court's exclusion of the proffered evidence prejudiced him. *See State v. Wesson,* 83 N.M. 480, 483, 493 P.2d 965, 968 (Ct.App.1972) (holding that "[e]rror, to be reversible, must be prejudicial"). We believe Defendant showed prejudice, however, because the exclusion compromised his right to present witnesses on his own behalf. *See State v. Dorsey,* 87 N.M. 323, 325, 532 P.2d 912, 914 (Ct.App.1975) (recognizing the fundamental due process right of a criminal defendant to present witnesses for his or her defense).

{19} Citing *State v. Finchum,* 111 N.M. 716, 718–19, 809 P.2d 630, 632–33 (1991), the State next argues that the exclusion was harmless because substantial evidence supported the conviction, the sister-in-law's tes-

timony was insignificant in comparison, and there was no substantial evidence discrediting the State's case. We disagree. The testimony was key to Defendant's rebuttal of the State's expert testimony that the victim's sexual knowledge indicated she was abused. *Cf. State v. Gutierrez*, 1998–NMCA–172, ¶ 14, 126 N.M. 366, 969 P.2d 970 (holding that admission of hearsay was not harmless where only one other statement directly implicated the defendant in shooting the victim).

{20} In summary, we believe that the combined impact of these irregularities amounted to cumulative error and deprived Defendant of a fair trial.

## B. Sufficiency of the Evidence

{21} Pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967) (advising counsel to advance arguments desired by client even if the merits of those arguments are questionable), and *State v. Boyer*, 103 N.M. 655, 659, 712 P.2d 1, 5 (Ct.App. 1985) (recognizing that an attorney should present a client's contentions even if they go against the attorney's wisdom), Defendant argues that sufficient evidence did not support his convictions. His motion for a directed verdict preserved this issue. *See State v. Jacobs*, 102 N.M. 801, 803, 701 P.2d 400, 402 (Ct.App.1985).

■ {22} "We review the evidence in the light most favorable to the verdict, resolving all conflicts . . . and indulging all reasonable inferences . . . in support of the judgment." *State v. Orgain*, 115 N.M. 123, 126, 847 P.2d 1377, 1380 (Ct.App.1993). We defer to the trial court's resolution of factual conflicts and determine "whether the evidence viewed in this manner could support the conviction." *Id.* It is the "exclusive province of the jury" to resolve factual inconsistencies in testimony. *Id.*

{23} Section 30–9–13 defines criminal sexual contact of a minor in relevant part as:

the unlawful and intentional touching or applying force to the intimate parts of a minor or the unlawful and intentional causing a minor to touch one's intimate parts. For the purposes of this section, "intimate

parts" means the primary genital area, groin, buttocks, anus or breast.

A. Criminal sexual contact of a minor in the third degree consists of all criminal sexual contact of a minor perpetrated:

(1) on a child under thirteen years of age[.]

{24} Section 30–9–11 defines criminal sexual penetration in relevant part as:

the unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse or the causing of penetration, to any extent and with any object, of the genital or anal openings of another, whether or not there is any emission.

. . .

C. Criminal sexual penetration in the first degree consists of all sexual penetration perpetrated:

(1) on a child under thirteen years of age; or

(2) by the use of force or coercion that results in great bodily harm or great mental anguish to the victim.

{25} Defendant's convictions under these statutes ensue from the incidents occurring in December 1995 and on March 15, 1996. Having reviewed the record, we believe that sufficient evidence supported the convictions.

■ {26} First, the victim reported the sexual abuse to her teacher and school principal. The results of her medical examination were consistent with sexual abuse. The victim told a social worker that someone had been touching her privates and putting his privates into hers; specifically, the victim pointed to her groin area. She also described a man's penis. The victim told the social worker that this happened about five times. The first incident occurred in December 1995, just before Christmas. At that time, the victim reported that a man touched her privates between her legs with his hand. The fifth incident occurred the weekend before the victim reported the abuse, in March 1996.

{27} Next, the victim's counselor testified that the victim told her of the sexual abuse. The victim stated to her that "a peepee was

put in her cookie." Using anatomically correct dolls, the victim said to the counselor "that the man doll had pulled down his pants a little and pulled off her underwear and the man tried to put his peepee in the cookie." The counselor also testified that the victim told her, "I felt the peepee, I cried, and the man doll stopped." Additionally, the victim stated to her that "sometimes when she cries the man doll doesn't stop." Finally, the counselor said that the victim was diagnosed with posttraumatic stress disorder, which can be caused by sexual abuse.

{28} Finally, the victim herself testified as follows. Defendant "put his private into my private." That occurred during the time when Mrs. McCauley was her teacher. Defendant touched her privates in her mother's bedroom on the bed. That happened at Christmas and on a Friday in March when she was at home sick.

{29} Under the standard of review we previously noted, we conclude that this evidence was sufficient to support the convictions.

## C. Speved Trial

{30} Defendant argues that we should dismiss the charges against him because the eighteen-month delay between his arrest and trial violated his state and federal constitutional right to a speedy trial. *See* U.S. Const. amends. VI, XIV; N.M. Const. art. II, § 14; *County of Los Alamos v. Beckman,* 120 N.M. 596, 600, 904 P.2d 45, 49 (Ct.App.1995). We balance four factors in deciding whether Defendant's right to a speedy trial was violated: (1) the length of the delay, (2) reasons for the delay, (3) Defendant's assertion of his right, and (4) prejudice to Defendant. *See Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *State v. Rojo,* 1999–NMSC–001, ¶ 49, 126 N.M. 438, 971 P.2d 829. In this analysis, "we independently examine the record to determine whether Defendant's right to a speedy trial was violated, but give due deference to the trial court's findings of fact." *Benavidez,* 1999–NMCA–053, ¶ 31, 127 N.M. 189, 979 P.2d 234.

{31} The right to a speedy trial attaches when the reputed defendant becomes the "accused." *See State v. Manzanares,* 1996–NMSC–028, ¶ 8, 121 N.M. 798, 918 P.2d 714. This occurs with a formal indictment or information or arrest. *See id.* Defendant was arrested on March 19, 1996, and brought to trial on October 14, 1997. The trial court held that the case was of medium complexity and that the length of the delay raised a presumption of prejudice. *See id.* ¶ 9 (holding that for cases of intermediate complexity, a twelve-month delay raises a presumption of prejudice). On appeal, neither party challenges this categorization of the case. Consequently, the burden shifted to the State to show that the *Barker* factors did not support dismissal. *See Manzanares,* 1996–NMSC–028, ¶ 9, 121 N.M. 798, 918 P.2d 714. The trial court concluded that the State had rebutted the presumption of prejudice. The State can discharge its burden by showing that one or more of the following circumstances exist: there were good reasons for the delay, defendant did not timely assert his right and consented to the delay, or the delay did not prejudice the defendant. *See Work v. State,* 111 N.M. 145, 147, 803 P.2d 234, 236 (1990).

{32} We now turn our analysis to the four *Barker* factors. As we previously noted, the length of the delay was about nineteen months, raising a presumption of prejudice. There were the following reasons for the delay. On September 23, 1996, the State filed a petition for an extension of time under Rule 5–604(D) NMRA 1999. On October 11, the Supreme Court granted the petition because the trial court could not schedule the trial within six months under Rule 5–604(B). Although the Supreme Court's memorandum indicated that Defendant stipulated to this extension, the State's petition provided that it was unable to contact Defendant's counsel. Defense counsel also noted this fact at the hearing on Defendant's motion to dismiss. Defendant argues that the six months from his arrest to this petition weigh against the State. Because the trial court's inability to schedule Defendant's trial resulted in this delay, we decline to allocate this period to either party. *See Benavidez,* 1999–NMCA–053, ¶ 35, 127 N.M. 189, 979

P.2d 234 (refusing to charge either party with delay caused by trial court's reassignment of the case).

{33} In granting the petition, the Supreme Court reset the trial deadline from October 15, 1996, to February 15, 1997. A jury trial was scheduled for October 31 to November 1, 1996. On October 26, 1996, defense counsel filed a Joint Motion for Continuance, stating that both parties desired more time to prepare for trial and consider settlement possibilities. Defendant argues that the month between the Supreme Court's extension and Defendant's motion for a continuance weighed against the State. We do not attribute this time for the consideration of the State's pretrial motion to either party. *See id.* ¶ 39 (declining to charge either party with the delay resulting from the defendant's pretrial motions).

{34} Defendant concedes that the following eight months, until his own motion for a continuance, weighed against neither party. He also argues that the four months following his motion, until his motion to dismiss, weighed against him. In conclusion, judicial procedure and the parties' trial preparation contributed to the delay in this case. Because the Defendant was responsible for some of this delay, we weigh this factor slightly in favor of the State.

{35} The third factor of the *Barker* analysis is Defendant's assertion of his right to a speedy trial. Defendant invoked his speedy trial rights just prior to trial. Consequently, we do not give Defendant much weight for this assertion because most of the delay had already passed and he moved for dismissal rather than for a prompt trial. *See State v. Tortolito*, 1997–NMCA–128, ¶ 17, 124 N.M. 368, 950 P.2d 811 (noting that assertion of right given less weight where the defendant does not move for a speedy trial as an alternative to dismissal); *State v. White*, 118 N.M. 225, 227, 880 P.2d 322, 324 (Ct.App.1994) (holding that assertion of right to a speedy trial two days before trial was not entitled to much weight).

{36} Finally, the only prejudice that Defendant asserts is his pretrial incarceration. Our Supreme Court in *Zurla v. State*, 109 N.M. 640, 644, 789 P.2d 588, 592 (1990), recognized three types of prejudice that the right to a speedy trial was "intended to minimize or prevent: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused; and (3) the possibility of impairment to the defense." Defendant has failed to demonstrate any prejudice other than his pretrial incarceration. Consequently, from our analysis of the four *Barker* factors, we conclude that the State overcame the presumption of prejudice and that Defendant's right to a speedy trial was not violated.

## III. CONCLUSION

{37} We conclude that the cumulative error resulting from the hugging incident and the exclusion of the sister-in-law's testimony deprived Defendant of his fundamental right to a fair trial. We hold, however, that the evidence was sufficient to support the convictions and that Defendant's speedy trial rights were not violated. We therefore reverse Defendant's convictions and remand for a new trial.

{38} **IT IS SO ORDERED.**

DONNELLY and HARTZ, JJ., concur.