This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38369**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ELVIS GAYTAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Matthew E. Chandler, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**YOHALEM, Judge.**

**{1}** Defendant Elvis Gaytan challenges his conviction for criminal sexual contact of a minor (child under thirteen years of age), contrary to NMSA 1978, Section 30-9-13(B)(1) (2003) (CSCM). Defendant claims multiple errors: (1) prosecutorial misconduct by misrepresenting the evidence in closing argument; (2) improper prosecutorial comment on Defendant's invocation of his pre-arrest right to remain silent; (3) the district court's improper response to the jury's question about the amendment of the charge during trial; (4) the exclusion of admissible evidence of Victim's prior inconsistent statements; (5) the district court's inaccurate response to the jury's request to see the transcript

during deliberations; and (6) the district court's denial of Defendant's motion for a mistrial. Defendant's primary argument is that the cumulative impact of these errors denied Defendant a fair trial. Without deciding whether, standing alone, any of the issues raised by Defendant give rise to reversible error, we hold that the first three issues together denied Defendant his fundamental right to a fair trial. We find no error in the remaining issues raised by Defendant. Finally, because Defendant would be entitled to a dismissal of the charges on remand if the evidence adduced at trial were insufficient to support his conviction, we address the sufficiency-of-the-evidence issue raised by Defendant. We conclude that sufficient evidence supported Defendant's conviction. We, therefore, reverse and remand for a new trial.

**BACKGROUND**

{2}     Defendant grew up being treated as a member of ten-year-old Victim's extended family. During the summer of 2017, when the incident at issue here allegedly occurred, Defendant was residing in the home of Victim's grandmother and working at Lowe's, loading heavy materials. It was undisputed that Defendant regularly visited Victim's family.

{3}     In November 2017, just before Thanksgiving, Victim disclosed to her parents that Defendant had inappropriately sexually touched her sometime during the summer. Victim could not remember the date but thought it was between May and August of 2017.

{4}     Chief of Police for the Texico Police Department, Douglas Bowman, investigated the case. Chief Bowman set up a Safehouse interview for Victim on the Monday before Thanksgiving. At the Safehouse interview, Victim reported that Defendant had penetrated her with his finger. Based on Victim's Safehouse interview, which he observed, Chief Bowman obtained an arrest warrant for Defendant the next day (the Tuesday before Thanksgiving) for one count of criminal sexual penetration of a minor (child under thirteen years of age), pursuant to NMSA 1978, Section 30-9-11 (2009) (CSPM). Defendant was subsequently indicted for one count of CSPM, based on Victim's allegations.

{5}     The day of trial, Defendant filed a motion in limine to exclude any mention of an allegation by Victim of a prior incident of inappropriate sexual conduct by Defendant several years earlier. The prosecutor agreed that any mention of Victim's allegation of a prior incident was both inadmissible and prejudicial, and the prosecutor reported that he had instructed the State's witnesses not to mention it.

{6}     Victim was the first witness. She testified that the incident at issue occurred sometime between May and August of 2017. On that day, Victim described going into her nine-year-old brother's room to watch him play video games. She said she sat down next to her brother on the floor with her legs crossed. Shortly after, Defendant walked into the room, and sat to her right.

**{7}** Victim testified that Defendant reached up under her shorts and put his hand on the exterior of her vagina for a couple seconds. Contrary to her previous Safehouse statement, and contrary to the indictment, Victim specifically denied any digital penetration. Victim testified she struggled with Defendant and attempted to pull away but that he would not let her go. Victim's brother was two feet away from them but, according to Victim, did not notice the struggle.

**{8}** Cross-examination of Victim focused on discrepancies between her statement at the Safehouse interview and her testimony at trial. The defense focused, in particular, on Victim's testimony that she struggled to get away from Defendant and that he held on to her and would not let her move away. Victim testified on cross-examination that she could not remember whether she mentioned the struggle during her witness interview with defense counsel. Similarly, Victim could not remember if she had said anything about a struggle in her Safehouse interview but that she "may have."

**{9}** Chief Bowman testified next. Moments into his testimony, the prosecutor asked Chief Bowman whether he learned about a certain incident and whether it happened recently or some time ago. Chief Bowman began talking about being confused because there was a second "incidence[]. . . case[]. . . or. . . point[]" that happened several years before. The defense immediately moved for a mistrial. The court denied the motion for mistrial, finding that the jury would not have understood the testimony as referring to a prior incident of sexual contact by Defendant, and offered a curative instruction, which the defense refused.

**{10}** In the remainder of his testimony, Chief Bowman testified that the original charge had been digital sexual penetration, based on Victim's allegations. Most of his testimony focused on his efforts to locate and arrest Defendant on the Wednesday before Thanksgiving, two days after Victim's Safehouse interview.

**{11}** During Defendant's cross-examination of Chief Bowman, defense counsel first confirmed that Chief Bowman had observed Victim's Safehouse testimony and had reviewed the recording of that testimony prior to the grand jury. The defense then asked Chief Bowman whether Victim mentioned a struggle with Defendant in the Safehouse interview. The prosecution objected on the ground of improper impeachment, and the court agreed, without explanation.

**{12}** At the close of the State's case, outside of the presence of the jury, the court amended the charge to criminal sexual contact of a minor (under the age of thirteen), contrary to Section 30-9-13(B)(1), a lesser included offense of criminal sexual penetration. The charge was amended based on the change in Victim's testimony. The prosecution requested amendment of the offense charged, admitting that, without Victim's testimony that there had been penetration, the evidence was insufficient to convict Defendant of criminal sexual penetration. The court did not inform the jury of the amendment of the charge or the reasons for the amendment, later instructing the jury solely on the lesser offense of CSCM.

**{13}** Defendant then testified in his own defense. He denied any sexual touching or sexual contact of any kind with Victim. The prosecutor's cross-examination of Defendant focused on Defendant's activities on the Wednesday before Thanksgiving. The prosecutor suggested that Defendant knew Chief Bowman was looking for him on that Wednesday and that he was hiding to avoid talking to the police. The prosecutor attempted to impeach Defendant's testimony that he had called in sick to work first thing in the morning, before he knew Chief Bowman was looking for him. Defendant denied that he knew Chief Bowman was looking for him or that he could have known when he called in sick at 8:00 a.m. Defendant testified that he did not know Chief Bowman was looking for him until receiving a call from his brother mid-day. Defendant reported that he first called his lawyer, and then called Chief Bowman on the direction of his lawyer to tell Chief Bowman his lawyer was out of town and he would not talk to Chief Bowman until Monday, when his lawyer returned.

**{14}** During his cross-examination of Defendant, the prosecutor misrepresented Chief Bowman's testimony, stating wrongly, that Chief Bowman had testified that he had contacted Lowe's to locate Defendant after the Wednesday phone call, and that Lowe's later contacted him and said Defendant was out sick. The prosecutor suggested in his cross-examination of Defendant that Defendant was lying about calling in sick at 8:00 a.m., before he knew Chief Bowman was looking for him. The record shows that Chief Bowman never testified he had contacted Lowes before going out there. There was no inconsistency between Chief Bowman's testimony and Defendant's testimony that Defendant had called in at 8:00 a.m., before knowing Chief Bowman was looking for him. No objection to this misstatement was made by the defense. Finally, the prosecutor questioned Defendant about his testimony that he was lifting heavy bags at Lowe's, some weighing eighty to ninety pounds, trying to get Defendant to admit he could easily manhandle a ten-year-old child:

Prosecution: So you were moving 80-pound bags of concrete?

Defendant: Yes.

Prosecution: Pretty strong, right?

. . . .

Prosecution: *So an 80- to 90-pound ten-year-old girl, you would be able to move her around too, wouldn't you?*

Defendant: No sir, it's not true.

Prosecution: You wouldn't be able to? You wouldn't be able to? She's too strong for you?

. . . .

Prosecution: So that kind of a guy that is working like that, he's strong, correct?

Defendant:  I guess.

Prosecution:*And, so, a ten-year-old girl is nothing to a person like that, correct?*

Defendant:  Well that's not me sir.

(Emphases added.) No objection was made by the defense.

**{15}**   The prosecution then called Chief Bowman back to the stand in his rebuttal case specifically to question him about whether Defendant told him that when his lawyer got back into town, he would meet with him. The prosecutor elicited Chief Bowman's testimony that Defendant had not said that. The defense did not object. Chief Bowman also testified that Defendant's brother had told him that Defendant was "scared of the cops[.]" Although a hearsay objection was made and sustained over the State's claim that this testimony was not offered for the truth of the matter asserted, no corrective instruction was given. On cross-examination, Chief Bowman testified that Defendant had said in the telephone call the Wednesday before Thanksgiving that he was "scared of talking to [Chief Bowman] without an attorney." Chief Bowman then testified that he told Defendant, "If I had molested a child, I would want to hide too."

**{16}**   In closing argument, defense counsel told the jury that the charge had changed and suggested that the reason for the change was that Victim had told a different story.

**{17}**   In his closing argument, the prosecutor bolstered Victim's credibility. In his reply argument, the prosecutor attacked Defendant, raising three points: (1) that Chief Bowman had contacted Lowe's after the telephone call with Defendant, and then went out to find Defendant, only to find out when he got there that Defendant had called in sick to avoid the Chief; (2) that Defendant showed a consciousness of guilt by jumping to the conclusion that the prosecutor was asking about his lifting of heavy bags to suggest he had manhandled Victim; and (3) that Defendant had lied when he testified he would talk to Chief Bowman when his lawyer returned to town, when really, he had said he was scared to talk to the police.

**{18}**   During jury deliberations, at the end of the day, the jury asked to review the transcript. The proceedings had been audio-recorded. Over Defendant's objection, the court instructed the jury that there was no transcript, explaining that, because the jury was not asking to replay certain testimony, the court did not want to interfere with deliberations by inquiring what they meant. The court, therefore, responded narrowly, telling them there were no transcripts either as exhibits or of the testimony and that they should rely on their memory.

**{19}**   When deliberations resumed the next morning, the jury sent the district court a note asking, "Was the original charge criminal sexual penetration? If so[,] why did it change to criminal sexual contact?" The court responded that the charge had been amended, but went on, over Defendant's objection, to tell the jury that they were not

permitted to speculate and must focus on the criminal sexual contact charge in front of them. The jury returned a verdict of "guilty" shortly thereafter. Defendant appealed.

**DISCUSSION**

**{20}** Defendant argues cumulative error arising from the six issues he raises on appeal: (1) prosecutorial misconduct based on misstatements of the evidence in closing argument; (2) the prosecution's focus on Defendant's pre-arrest invocation of his right to remain silent for the purpose of suggesting guilt; (3) the court's misleading answer to the jury's question about the amendment of the charge mid-trial; (4) the exclusion of extrinsic impeachment evidence central to the defense; (5) the court's failure to properly inform the jury of the availability of an audio-transcript; and (6) the denial of a mistrial.

**{21}** We agree with Defendant that cumulative error from the first three issues requires reversal. The conviction of Defendant turns entirely on the jury's determination of the relative credibility of Defendant and ten-year-old Victim. The three errors made in the course of trial that lasted a little more than two hours, taken together, had considerable prejudicial impact on the jury's ability to evaluate both Defendant's and Victim's credibility, depriving Defendant of a fair trial.

## I.      The Prosecutor's Misstatements of the Evidence

**{22}** Defendant argues that the prosecutor committed prosecutorial misconduct by misstating the evidence in the record both during his cross-examination of Defendant and in his closing argument. Defendant challenges five statements made by the prosecutor: (1) that Chief Bowman testified that he called Defendant's workplace before going there to talk to Defendant, and that, when he got there, he was told Defendant had called in sick, suggesting, according to the prosecutor that Defendant lied about calling in sick at 8:00 a.m.; (2) that it was Defendant who jumped to the conclusion that the prosecutor was implying that he manhandled Victim when he cross-examined Defendant at length about being strong enough to lift eighty to ninety pounds; (3) that Defendant's testimony about calling in sick to work kept changing; (4) that Defendant testified that he would go over to his friend's house to play video games; and (5) that Defendant testified that he lifted eighty- to ninety-pound bags nine hours a day, six days a week.

**{23}** A "prosecutor has a duty not to misstate the facts[.]" *State v. Garvin*, 2005-NMCA-107, ¶ 29, 138 N.M. 164, 117 P.3d 970. Although "the prosecution is allowed reasonable latitude in closing arguments . . . the prosecutor's remarks must be based on the evidence." *State v. Taylor*, 1986-NMCA-011, ¶ 25, 104 N.M. 88, 717 P.2d 64.

**{24}** We are troubled by two of the statements Defendant claims constitute prosecutorial misconduct: (1) the prosecutor's comment that Chief Bowman contacted Defendant's workplace mid-day, and then went out to locate Defendant, only to be told Defendant had called in sick; and (2) the prosecutor's claim that it was Defendant who

jumped to the conclusion, that his strength suggested he had manhandled Victim, when the point was made by the prosecutor.

**{25}** The record shows that Chief Bowman never testified that he contacted Defendant's workplace before going there. Nothing about Chief Bowman's testimony is inconsistent with Defendant's testimony that he called in sick early in the morning, before he knew Chief Bowman was looking for him. It was improper to impeach Defendant on cross-examination based on the misstatement that Chief Bowman had checked with Lowe's mid-day, and it was improper to hammer home to the jury in closing argument that Defendant was lying about calling in sick in the early morning.

**{26}** The prosecutor's argument that Defendant jumped to the conclusion that he was being accused of manhandling Victim based on innocent questions from the prosecution plainly misstates the prosecution's cross-examination of Defendant. It was the prosecutor who drew that connection, questioning Defendant relentlessly on an issue irrelevant to any disputed fact in the case: any full-grown man, whether particularly strong or not could overpower a ten-year old. Defendant's ability to physically restrain a little girl was not in dispute; the dispute was about whether he had, in fact, restrained her. The record shows unequivocally that it was the prosecutor who drew the connection between strength and guilt, not merely asking one or two questions, but taunting Defendant for several minutes, trying to get Defendant to admit that, because he lifted heavy bags at work, he was able to restrain child, and had in fact, restrained Victim. The prosecutor returned to this theme in closing, twisting the record to suggest that it was Defendant who showed a consciousness of guilt.

**{27}** We note that both of the misstatements of the evidence, used by the prosecution to suggest that Defendant had a consciousness of guilt, were made by the prosecution in its reply closing argument, where the prosecution had the last word and Defendant had no opportunity to respond. *See State v. Sosa*, 2009-NMSC-056, ¶ 24, 147 N.M. 351, 223 P.3d 348 ("Closing argument is unique. Coming at the end of trial, and often after jury instructions, it is the last thing the jury hears before retiring to deliberate, and therefore has considerable potential to influence how the jury weighs the evidence.").

**{28}** We find it difficult to see the prosecutor's closing argument about Defendant inferring a suggestion of guilt from questioning about his strength as anything but an intentional misrepresentation, given the prosecutor's extensive cross-examination on this issue. In any event, we note that even a careless mistake in representing the facts by the prosecution can be an ingredient in a cumulative error analysis. *See Garvin*, 2005-NMCA-107, ¶ 29. We will reserve our review of the impact of both of these misrepresentations for our cumulative error analysis.

## II. The Prosecutor Improperly Commented on Defendant's Pre-Arrest Silence

**{29}** Defendant next contends that the prosecutor improperly elicited testimony on Defendant's pre-arrest invocation of his right to remain silent and then commented on Defendant's exercise of that right in his closing argument for the purpose of inferring

guilt. The State responds that evidence of Defendant's invocation of his right to remain silent was admitted for impeachment purposes, and not as proof of Defendant's guilt. We are not persuaded by the State. We agree with Defendant that the evidence elicited by the prosecutor was not proper impeachment; the prosecutor, whether intentionally or unintentionally, drew the classic contrast for the jury, "the innocent speak, while the guilty remain silent." *State v. McDowell*, 2018-NMSC-008, ¶ 22, 411 P.3d 337.

**{30}**    The State claims that the testimony of Chief Bowman in the prosecution's rebuttal case, focused entirely on Defendant's phone call telling Chief Bowman he would not talk to him without his attorney, was proper impeachment. The prosecutor recalled Chief Bowman to the stand to deny that Defendant told him he would talk to him on Monday, when his lawyer returned from the Thanksgiving holiday. Chief Bowman then testified in cross-examination that Defendant actually said he was "scared" to talk to the police without his lawyer. It was this claimed prior inconsistent statement that was a focus of the State's closing argument.

**{31}**    We begin by addressing the principles of law applicable when a prosecutor elicits testimony or comments on a defendant's right to remain silent. Although it is well-settled that the Fifth Amendment to the United States Constitution forbids comment by the prosecution on the accused's failure to testify and similarly protects an accused defendant from comment on post-*Miranda* silence, there is disagreement among state and federal courts about whether a prosecutor is permitted to introduce evidence of a defendant's pre-arrest and pre-*Miranda* invocation of the right to remain silent. *See State v. Costillo*, 2020-NMCA-051, ¶¶ 8-11, 475 P.3d 803. This Court recently agreed with those federal and state courts that have concluded that a defendant's invocation of his or her right to remain silent pre-arrest may not be admitted or otherwise relied on as substantive evidence of guilt at trial, stating: "We, too, consider assertions of an individual's Fifth Amendment right of silence in the face of accusatory questioning by law enforcement to not be fodder for insinuations of guilt at trial." *Id.* ¶ 11.

**{32}**    Although a prosecutor may not rely on a defendant's invocation of his or her right to remain silent or on pre-arrest silence itself to infer guilt, the prosecutor is permitted to comment on a defendant's pre-arrest invocation of his or her right to remain silent for purposes other than inferring guilt. Our Supreme Court has held that "the use of a defendant's pre-arrest silence to impeach is constitutional." *State v. DeGraff*, 2006-NMSC-011, ¶ 14, 139 N.M. 211, 131 P.3d 61 (alteration, internal quotation marks, and citation omitted). Such impeachment, however, remains subject to our Rules of Evidence. *Id.* Our Supreme Court has held that, although use of pre-arrest silence to impeach a defendant is not a constitutional violation, such evidence should nonetheless be excluded, pursuant to Rule 11-403 NMRA, "where its prejudicial effect substantially outweighs its probative value." *DeGraff*, 2006-NMSC-011, ¶ 14.

**{33}**    We first consider whether Defendant invoked his right to remain silent in his pre-arrest phone call with Chief Bowman. The law requires that the privilege be invoked; any language that may reasonably be expected to be understood as an attempt to invoke the privilege is sufficient. *Costillo*, 2020-NMCA-051, ¶ 14 (stating that the desire

not to speak further is sufficient). Under both Defendant's and Chief Bowman's versions of their telephone call, Defendant called to tell the Chief that he would not talk to him. The controversy was about whether Defendant said he would talk another time, once his counsel returned to town, as Defendant testified, or said that he was afraid to talk to the police without counsel, before hanging up on Chief Bowman and saying nothing further. In either event, his statement, followed by his hanging up the phone, plainly communicated to Chief Bowman that he was invoking his right to remain silent to avoid incriminating himself, as provided by the Fifth Amendment to the United States Constitution.

{34}    Whether the prosecutor's introduction of Chief Bowman's rebuttal testimony and the prosecutor's remarks in closing constitute an impermissible comment on Defendant's invocation of his right to remain silent for purposes of insinuating guilt is a more difficult question. We note first that the testimony about Defendant's invocation of his right to remain silent was not introduced in the prosecution's case-in-chief, but was introduced on cross-examination, after Defendant took the stand in his own defense. Defendant described calling his attorney and then calling Chief Bowman on counsel's advice. This testimony was elicited in response to the prosecutor suggesting to Defendant that Defendant knew Chief Bowman was looking for him. There is no question that the prosecutor was fully aware before asking this question that it would elicit testimony about Defendant's phone conversation with Chief Bowman. The prosecutor nonetheless hit hard on his theme of Defendant hiding from Bowman, and then went on, without objection, to ask Defendant to repeat exactly what he said to Chief Bowman.

{35}    It is not the introduction of this testimony that alone was improper, although arguably the prosecutor should have avoided cross-examination that elicited and then emphasized by repetition Defendant's statement invoking his right to remain silent. It is the use that was made of this elicited testimony that we conclude gives rise to prosecutorial misconduct. In his rebuttal case, the prosecutor recalled Chief Bowman to the stand specifically to testify that Defendant did not tell him that when his attorney got back into town, Defendant would meet with Chief Bowman. The prosecutor allowed Chief Bowman to testify, even though it is hearsay, that Defendant's brother said Defendant was "scared of the cops[.]" Although an objection was made and the prosecutor responded that the testimony was not being offered for the truth of the matter asserted, the jury heard the answer. Chief Bowman then further testified in response to defense questioning, again emphasizing Defendant's fear of talking to the police without an attorney and telling the jury that he told Defendant, before Defendant hung up on him, that "If I molested a child, I would want to hide too." The prosecutor then again emphasized Chief Bowman's testimony in his rebuttal closing argument, describing the testimony as showing Defendant was a liar.

{36}    We do not agree with the State's claim that Chief Bowman's rebuttal testimony was proper impeachment testimony, admissible under Rule 11-403. Impeachment by a prior inconsistent statement invoking one's right to remain silent is permissible only where a defendant's invocation of his right to remain silent "appear[s] to be an act

blatantly inconsistent with the defendant's trial testimony[,]" and where the invocation of the right to remain silent is probative of the defendant's guilt. *State v. Lara*, 1975-NMCA-095, ¶¶ 4, 5, 88 N.M. 233, 539 P.2d 623 (internal quotation marks and citation omitted).

{37}    These requirements for admission of Defendant's invocation of his right to remain silent for impeachment purposes were not met here. First, there was no blatant inconsistency between Defendant's testimony and Chief Bowman's testimony about what Defendant said on the phone. In both versions of Defendant's phone conversation with Chief Bowman, Defendant refused to talk to Chief Bowman without a lawyer, invoking his Fifth Amendment right to not incriminate himself. Chief Bowman's statement that Defendant said he was "scared of talking . . . without an attorney[,]" followed by hanging up the phone, is a proper invocation of a defendant's right to remain silent. *See Roberts v. United States*, 445 U.S. 552, 561 (1980) (holding that a defendant properly invokes his Fifth Amendment rights by informing law enforcement that he is refusing to provide information either "based upon the right to remain silent or the fear of self-incrimination"). The import of Defendant's statement was that he feared self-incrimination. That is a proper invocation of his right to remain silent. *See id.*

{38}    The second requirement that must be met to use a defendant's statement invoking the right to remain silent for impeachment purposes is that the inconsistency in the two statements must have significant probative value. Impeachment with evidence of a defendant's exercise of the right to remain silent has been found to be sufficiently probative when a defendant gives a seemingly complete statement before invoking his right to remain silent, and that statement leaves out exculpatory details later raised at trial. *See, e.g.*, *State v. Foster*, 1998-NMCA-163, ¶ 15, 126 N.M. 177, 967 P.2d 852 (holding that the state was allowed to impeach the defendant about his failure to mention an important aspect of the incident at issue, when he otherwise gave an ostensibly full account of the incident). In this example, the suggestion of recent fabrication of the story told at trial had significant probative value. Unlike the circumstances in *Foster*, impeaching a defendant because he failed to accurately remember the particular words he used to invoke his Fifth Amendment right has no probative value apart from the improper equation of a defendant's refusal to talk to the police, or his fear of incriminating himself if he talks to them, with guilt. *Lara*, 1975-NMCA-095, ¶¶ 7-8. In this case, Chief Bowman drove that connection home by telling the jury that he responded to Defendant's invocation of his right to silence by telling Defendant, "If I had molested a child, I would want to hide too." Although the State argues that the prosecutor avoided any potential error by telling the jury in closing argument that a defendant has a right to counsel and that Defendant's request for counsel should not be taken against him, the prosecutor never told the jury that a defendant has a right to remain silent and that his refusal to talk to the police should not be taken against him.

{39}    If this prosecutorial misconduct were the only issue before us, we would likely not find that the prosecutor's reliance on Defendant's invocation of his right to silence alone deprived Defendant a fair trial, as required for reversal based on fundamental error. *See*

*Allen*, 2000-NMSC-002, ¶ 95. There is some question about whether Defendant opened the door to questioning about his phone conversation with Chief Bowman, although on balance, we believe that the prosecution's role in eliciting that testimony, together with the prosecution's emphasis on and use of the testimony in rebuttal and in closing argument, amounted to misconduct. *See State v. Wilson*, 1990-NMSC-019, ¶¶ 27-30, 109 N.M. 541, 787 P.2d 821 (reversing for cumulative error based in part on the prosecutor's failure to avoid questions he knew would lead to prejudicial testimony, and the prosecutor's use of those answers in closing, even though defendant may have opened the door). We, therefore, consider this error in our cumulative error analysis.

### III. The District Court Abused Its Discretion in Responding to the Jury's Question Concerning the Amendment of the Indictment

**{40}** Defendant argues that the district court abused its discretion in responding to the jury's question, during deliberations, about why the crime charged had changed mid-trial. Defendant was initially charged with CSPM, based on Victim's allegation at her Safehouse interview that Defendant digitally penetrated her vagina. CSPM remained the charge at the beginning of the trial. The jury was advised during voir dire that CSPM was the charge and was again advised by the court at the start of the trial. At trial, contrary to her statement during her Safehouse interview, Victim testified that Defendant touched the outside of her vagina for just a few seconds. Upon inquiry by the prosecutor, she specifically denied any digital penetration.

**{41}** The change in Victim's testimony apparently surprised both the prosecution and the defense. Defense counsel did not directly impeach Victim as to this inconsistency with her prior statement. The only evidence the jury heard about Victim's prior allegation of digital penetration came from Chief Bowman, who testified that "it was digital penetration that was alleged with a finger."

**{42}** After the State rested, outside of the presence of the jury, the State moved to amend the charge to conform to Victim's testimony, from CSPM, contrary to Section 30-9-11, to the lesser included offense of CSCM, contrary to Section 30-9-13(B)(1). Defendant did not object to the amendment of the charge, and the district court found that there was sufficient evidence of CSCM to establish a prima facie case. When the jury returned to the courtroom, the judge informed the jury that the State had completed its case. The jury was not informed that the district court had amended the charge.

**{43}** In his closing argument, Defendant argued to the jury that there were two different stories they had been told about what happened, pointing out that the charge had changed and that "something was changed and something was said initially that's not [been said at trial]." During deliberations, the jury sent the district court a note asking, "[w]as the original charge criminal sexual penetration? If so[,] why did it change to criminal sexual contact?"

**{44}** The district court proposed instructing the jury that the charge had changed but that "you may not speculate as to why the charge was amended." Defendant objected,

arguing that Defendant was entitled to have the jury draw the reasonable inference that the charge changed because Victim's testimony had changed, as the defense suggested in its closing argument. The district court disagreed, stating its view that the defense argument was improper speculation, unsupported by the evidence. The court then, instructed the jury that the charge had changed, but that "[its] verdict may not be based on speculation, guess or conjecture.

**{45}** The response sent to the jury read as follows:

> The original charge was Criminal Sexual Penetration of a Minor under the age of 13. The charge was amended to Criminal Sexual Contact [of a minor] at the conclusion of the State's case. *Your verdict may not be based on speculation, guess or conjecture.* Your duty is to determine if the State has proved beyond a reasonable doubt that Defendant committed the crime of Criminal Sexual Contact of a Minor under the age of 13.

(Emphasis added.) Approximately an hour after receiving this response to its question, the jury reported that it had reached a verdict.

**{46}** We review the district court's response to questions asked by the jury for abuse of discretion. *See Wall*, 1980-NMSC-034, ¶ 10. When the jury asks a question that shows it is confused, it is the duty of the court to attempt to clarify that confusion with a correct statement of the law. *See id.*; *see also State v. Juan*, 2010-NMSC-041, ¶ 16, 148 N.M. 747, 242 P.3d 314 ("[W]hen a jury requests clarification regarding the legal principles governing a case, the [district] court has a duty to respond promptly and completely to the jury's inquiry.").

**{47}** Before addressing the merits of the instruction, we first address the State's argument that Defendant failed to preserve the issue for appeal. The State argues that defense counsel waived his objection when he told the district court that he was "more comfortable" with the instruction ultimately given by the court, than with the court's first proposal.

**{48}** We are not persuaded by the State's argument that Defendant failed to preserve this issue for appeal. Defense counsel did not withdraw his objection; the district court having ruled against him, defense counsel cooperated with the court in its effort to improve the instruction the court had decided to give. The record shows that there was considerable disagreement between the parties and with the district court concerning the proper response to the jury's question, and that each side had the opportunity to contest the other's requested response. Based on these circumstances, we conclude that the purposes of the preservation rule were served. *See State v. Magby*, 1998-NMSC-042, ¶ 20, 126 N.M. 361, 969 P.2d 965 (holding that the defendant's objection to the jury instructions remained preserved when he did not withdraw his objection and there was considerable disagreement between the parties about the proper instructions), *overruled on other grounds by State v. Mascareñas*, 2000-NMSC-017, 129 N.M. 230, 4 P.3d 1221.

**{49}** We next address the merits of the court's response to the jury's question. We conclude that the district court abused its discretion in adding the admonition not to speculate. The district court based the exercise of its discretion on an incorrect understanding of the evidence in the record. The court believed it was correcting an error in defense counsel's closing argument, which had improperly encouraged the jury to speculate about the change in Victim's testimony. In concluding that Defendant's argument about the change in Victim's testimony called for speculation, the court overlooked Chief Bowman's testimony that the original CSPM charge was based on Victim's statement in the Safehouse interview alleging digital penetration. Chief Bowman's testimony, together with the Victim's inconsistent statement at trial, was sufficient to allow the jury to reasonably infer that the charge changed because the Victim's story changed. In any event, the court's instruction, pairing the information that the charge had changed with the warning not to speculate interfered with the jury's evaluation of the evidence. The jury should have been left to weigh the evidence before it and draw reasonable inferences from that evidence as it saw fit, without the court doubling down on the general instruction not to speculate, which had already been given to the jury. *See State v. Lindwood*, 1968-NMCA-063, ¶ 7, 79 N.M. 439, 444 P.2d 766 ("We recognize that it is error to single out one instruction for undue emphasis."). We will reserve our analysis of its impact on the verdict for our cumulative error discussion below.

## IV.    Cumulative Error Requires Reversal

**{50}** Defendant argues that, even if each error standing alone fails to rise to the level of either harmless error if the issue was preserved in the district court, or fundamental error if the issue was not properly preserved in the district court, cumulative error requires reversal. "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Roybal*, 2002-NMSC-027, ¶ 33, 132 N.M. 657, 54 P.3d 61.

**{51}** Cumulative error is a doctrine which we apply strictly. *Id.* "The doctrine cannot be invoked if no irregularities occurred, or if the record as a whole demonstrates that a defendant received a fair trial[.]" *State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595, 686 P.2d 937 (citations omitted). Although we strictly apply the cumulative error doctrine, we have the responsibility to "insure that a person convicted of a crime has a fair trial." *Id.* "We must reverse any conviction obtained in a proceeding in which the cumulative impact of irregularities is so prejudicial to a defendant that he is deprived of his fundamental right to a fair trial." *State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 9, 128 N.M. 382, 993 P.2d 96 (internal quotation marks and citations omitted). In this case, we agree with Defendant that, in the aggregate, the errors made by the prosecution and the district court denied Defendant a fair trial and, therefore, require reversal.

**{52}** This case turned on the jury's determination of the credibility of Defendant and Victim. There was no physical evidence or eyewitness testimony to any improper sexual conduct by Defendant with Victim. Defendant's credibility was attacked by the

prosecution in three significant ways: (1) that Defendant had hidden from Chief Bowman on the day before Thanksgiving, lying when he said he had called in sick early that morning before knowing chief Bowman was looking for him; (2) that Defendant jumped to the conclusion, out of a consciousness of guilt, that the prosecutor was implying he had manhandled Victim when he asked about Defendant's strength; and (3) that Defendant was afraid to talk to the police. The first two arguments were based on a misstatement of the evidence in the record, and the third improperly asked the jury to infer guilt from Defendant's invocation of his right to remain silent. All three arguments were made in the State's rebuttal argument in closing, maximizing their impact on the jury and denying Defendant an opportunity to respond. The prosecution thus severely undermined Defendant's credibility without a legitimate basis in the evidence.

**{53}** Additionally, the court's instruction to the jury during deliberations "not to speculate" about the reason the charge had changed, sent a message to the jury that the changes in Victim's testimony were not important and, in any event, were speculative, and therefore not something the jury should consider.

**{54}** In a case that turned entirely on the credibility of Defendant's denial, weighed against the credibility of Victim's accusation, we conclude that the errors made in this trial deprived Defendant of his right to a fair trial.

## V.     The Evidence in the Record Is Sufficient to Support the Verdict

**{55}** Defendant also claims that the evidence in the record is insufficient to support his conviction. We consider this argument, even though we are reversing his conviction, in order to determine whether remand for a new trial is permitted. *See State v. Miera*, 2018-NMCA-020, ¶ 47, 413 P.3d 491 (considering whether the verdict was supported by sufficient evidence in order to avoid double jeopardy concerns). "When considering whether sufficient evidence exists to support retrial, we consider all evidence—even that which was wrongfully admitted." *Id.* We "view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *State v. Storey*, 2018-NMCA-009, ¶ 45, 410 P.3d 256 (internal quotation marks and citation omitted). We then determine "whether the evidence, viewed in this manner, could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

**{56}** Because Victim's trial testimony alone, with its description of Defendant's alleged conduct, is sufficient to "justify a finding by any rational trier of fact that each element of the crime charged has been established," *id.* (internal quotation marks and citation omitted), we hold that sufficient evidence supported his conviction.

## CONCLUSION

**{57}** For the reasons set forth in this opinion, we reverse Defendant's conviction, and remand for a new trial.

**{58}    IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**I CONCUR:**

**BRIANA H. ZAMORA, Judge**

**JACQUELINE R. MEDINA, Judge (concurring in result only).**